Nathan, Ex., *v.* Lee, Rec.

NATHAN, EXECUTOR, ET AL. *v.* LEE, RECEIVER, ET AL.

[No. 18,234.   Filed February 24, 1899.]

MORTGAGES.—*Deeds.*—*Governed by Law of Situs of Realty.*—Mortgages or conveyances of real estate are governed by the law of the *situs* of the realty, and all questions relating to the validity thereof are determined according to that law, and not according to the law of the domicil of the contracting parties.   *p. 238.*

CORPORATIONS.—*Foreign Corporations.*—The restrictions or prohibitions contained in the charter of a foreign corporation, or those of the governing laws of the state where it is organized, in relation thereto, are recognized and enforced in other jurisdictions, and not the general legislation or judicial decisions of the state in which such corporation is organized.   *p. 239.*

COURTS.—*Assignment for Benefit of Creditors.*—*Preferences.*—*Insolvent Corporations.*—*Decisions of Courts of Sister State.*—A mortgage executed by an insolvent corporation of another state upon lands in this State to secure preferred creditors residing in the sister state will not be held invalid because of a decision of the supreme court of such state that an insolvent corporation cannot lawfully dispose of or encumber its property otherwise than for the equal benefit of all of its creditors, where such mortgage was not executed in violation of any statute of such state, nor in violation of any construction placed upon any statute of such state by its highest court.   *pp. 239, 240.*

CORPORATIONS.—*Preference of Creditors.*—*Insolvency.*—An insolvent corporation, in like manner as an insolvent natural person, may execute a mortgage upon its property for the purpose of securing preferred creditors.   *p. 239.*

ASSIGNMENT FOR BENEFIT OF CREDITORS.—*Mortgages.*—A mortgage executed by an insolvent corporation on lands in this State to secure preferred creditors is not a part of a deed of assignment made by mortgagor, where the deed of assignment was declared invalid as to the mortgaged property.   *pp. 240, 241.*

CORPORATIONS.—*Mortgage to Secure Preferred Creditors.*—*Insolvent Foreign Corporations.*—An insolvent foreign corporation may mortgage its lands in this State to secure a *bona fide* antecedent debt to a preferred creditor, where such action is not prohibited by the statutes of the foreign state.   *pp. 241-244.*

From the Dearborn Circuit Court.   *Reversed.*

*Gustavus Wald, Givan & Givan* and *Stephens, Lincoln & Smith,* for appellants.

*G. M. Roberts, C. W. Stapp, Thornton M. Hinkle* and *F. W. Hinkle,* for appellees.

JORDAN, J.—Appellee is the receiver of the G. Y. Roots Company, a foreign corporation, incorporated under the laws of the state of Ohio, and, prior to the suspension of its business, as hereinafter stated, its principal office was located at the city of Cincinnati, Ohio. The purpose for which this corporation was created was to manufacture, purchase, and deal in flour, grain, salt, and other merchandise, for profit. To further the object of its incorporation, it became the owner of and operated a large flouring mill and cooper shops, situated on certain described real estate in the city of Lawrenceburg, Dearborn county, Indiana. In 1893, Samuel Strasburger, a resident of Cincinnati, Ohio, loaned to this company, at different times, money amounting in the aggregate to $14,000 and over. This money was used by the company in carrying on its business. These several loans were evidenced by certain promissory notes executed by said company to Strasburger in 1893, payable to him at the city of Cincinnati, Ohio. In 1894, the company also borrowed of Rosa E. Levi, a resident of Cincinnati, Ohio, and one of the appellants in this appeal, money to the amount of $5,000 which was also used by the company in its business, and, for the several sums so loaned by her, the company executed its promissory notes, payable to her at Cincinnati, Ohio. On August 6, 1895, these notes of Strasburger and Levi were unpaid, and on that day the G. Y. Roots Company was insolvent, having contracted debts and liabilities amounting to $400,000, while its assets, at the same time, amounted in value to $140,000. On said day, it had virtually ceased to be a going concern, but was still in the possession and control of all of its property, but contemplated making a voluntary assignment for the benefit of its creditors.

On the said 6th day of August, at its office at Cincinnati, Ohio, in order to secure the payment of the notes held by Strasburger and Levi, for the money loaned, the company, by order of its board of directors, executed to each of these two creditors a mortgage upon its real estate, on which its mills and shops were situated in Lawrenceburg, Dearborn county, Indiana. These mortgages were in accordance with the form prescribed by the laws of Indiana, and were duly recorded, after their execution and acknowledgment, in the recorder's office of said Dearborn county, on said 6th day of August, 1895. On the same day, after the execution of these mortgages, this company under the insolvent laws of the state of Ohio, made what purported to be a voluntary assignment to Edwin M. Lee, as its assignee, of all of its property. It also, on the same day, executed a special deed of conveyance wherein it was recited that the said company conveyed and warranted to Edwin M. Lee its real estate, describing it, situated in Lawrenceburg, Dearborn county, Indiana, to be held by him in trust for the benefit of its creditors; the real estate described in this latter deed being the same which the company had previously mortgaged to Strasburger and Levi. On February 22, 1896, in an action instituted by certain creditors of this company, in the circuit court of Dearborn county, Indiana, appellee, Lee, was by said court appointed receiver of the said insolvent company, and duly qualified as such, and thereupon, by permission of that court, he instituted this action therein, making Strasburger, then in life, and Levi, together with the said G. Y. Roots Company and its said assignee, under its general and special assignments, parties defendant to the action. The receiver, by his action, invoked the judgment of the court in his favor as follows: (1) To set aside the mortgages executed by the said company on August 6, 1895, to Strasburger and Levi. (2) To set aside and have declared null and void, the two assignment deeds heretofore mentioned, made by the company on the said 6th day of August, so far as the same or either of them sought to assign

or transfer the property of the company, situated in Dearborn county, Indiana. (3) That the court order the said Dearborn county real estate sold, freed from the said mortgage liens, and in the event the said liens should be held valid, that the same attach to the proceeds arising out of the sale of the said mortgaged premises, etc.

All the parties appeared to this action and filed their answers thereto, and the matters and things involved under the issues so joined were submited to the court for its judgment. The only question, however, which the court adjudicated upon this complaint of the receiver was that which related to the validity of the deeds of assignment, so far as the same affected the property situated in Dearborn county, Indiana, and embraced in the mortgages of Strasburger and Levi. Upon this question, the court found and adjudged that the said deeds of assignment were invalid, and did not convey any right, title, or interest to the assignee in or to the property of the company situated in Dearborn county, Indiana, and further decreed that the said deeds of assignment be set aside and held for naught, and that the title to the said property be held to be as fully and effectually in said company, at the time of the appointment of the receiver by the Dearborn Circuit Court, as if such deeds of assignment had not been made. After the rendition of this judgment, Strasburger and Levi each filed a cross-complaint in the said action against the receiver, wherein they set up the notes which each held against the said Roots Company and also the mortgage executed by it to each of the cross-complainants, on the 6th day of August, 1895, to secure the payment of said indebtedness.

The relief which each sought by his respective cross-complaint, was to enforce the mortgage lien against the propremises; and each cross-complainant prayed that the respective lien of each, under his mortgage, be protected by the court in the distribution of the proceeds arising out of the

sale of the said mortgaged premises. After the filing of his cross-complaint, Samuel Strasburger died, and appellant Nathan, as his executor, was substituted as a party in his place and stead. The receiver then filed his answer to each of these cross-complaints, whereby he sought to defeat the mortgages and have them adjudged invalid by the court upon the grounds that they were each executed by the said company as a preference to said complainants, at a time when the company had become insolvent, and had decided to make an assignment of its property for the benefit of its creditors, and that, therefore, by the laws of Ohio, under which the company had been incorporated, as construed by the supreme court of that state, it was forbidden, under the circumstances, to execute the mortgages in controversy, and the prayer was that each of these instruments be declared invalid, and that the cross-complainants take nothing thereunder.

The answer of the receiver to each of the cross-complaints was held sufficient upon demurrer, and the said complainants replied by the general denial, and the cause being at issue between the said parties, was submitted to the court for trial and upon the evidence the court found for the receiver upon the issues joined upon the cross-complaints of Strasburger and Levi, to the effect that the mortgages in controversy were invalid, and did not constitute a lien upon the real estate therein described, nor a valid charge against the proceeds arising out of the sale of the mortgaged premises, and, over the separate motions of appellants for a new trial, wherein they each assigned, among others, as reasons therefor, that the finding of the court was contrary to law and also contrary to the evidence, the court adjudged and decreed the mortgages to be invalid, and that they be set aside and held for naught.

From this judgment appellants have appealed to this court, and their separate assignment of errors calls in question the ruling of the court upon the demurrers to the answer of ap-

pellee to the cross-complaint, and also the overruling of their respective motions for a new trial. The evidence is in the record and it discloses, among others, the facts heretofore stated. What might be denominated the charter' of the corporation in question, or, rather, the governing laws of the state of Ohio relative to the. creation of corporations, under which this company seems to have been incorporated and controlled, were introduced in evidence by the appellee. In addition to these statutes, the opinion of the supreme court of that state, in the case of *Rouse* v. *Merchants Nat. Bank*, decided June 18, 1889, and reported in 46 Ohio St. at page 493, 22 N. E. 293, 5 L. R. A. 378, was given in evidence upon the trial, by the appellee. The holding of the supreme court of Ohio in that appeal was to the effect that a corporation organized for profit, under the laws of Ohio, after it had become insolvent and had ceased to prosecute the object for which it was created, could not, by giving some of its creditors mortgages upon its corporate property, to secure the payment of antecedent debts, create a valid preference in their favor over other creditors of the insolvent corporation, or, over a general assignment thereafter made by such corporation for the benefit of its creditors.

The contention of counsel for appellee, in the main, is that, as the G. Y. Roots Company was an Ohio corporation, it was governed by the laws of that state; that the laws of Ohio prohibited it from executing the mortgages to appellants, under the circumstances, as it did; and that these laws must be given force and effect by the courts of Indiana. Hence it is insisted that the right of appellants to enforce the mortgages in dispute was properly denied by the lower court. The question, as counsel for appellee propounded it, is, can this foreign corporation prefer appellants, in the execution of these mortgages, over its other creditors, when its right to do so is denied by the laws of its domicil and where, as in this case, the persons seeking to enforce their rights, under the preference given, are citizens of the same state

under whose laws the corporation was created? Reduced to a single or simple proposition, the contention of counsel for appellee is that these mortgages were executed in violation of the charter of the company or governing laws of Ohio relative to corporations like the one in controversy, as such charter or laws have been construed or interpreted by the supreme court of that state in its decision in the case of *Rouse* v. *Merchants Nat. Bank*, 46 Ohio St. 493, and that the decision of the court in that case is as operative and controlling, under the circumstances, in Indiana as it is in Ohio, and that the rules of comity required the Dearborn Circuit Court to accept the principle or rule therein asserted as controlling upon it, and by reason thereof adjudge, under the facts, the mortgages in controversy to be invalid, and deny appellants' right to enforce them.

Counsel for the respective parties in this appeal have favored us with able and elaborate briefs in which they have cited numerous authorities which, as it is insisted, support the proposition which each advances. It would, however, unnecessarily extend this opinion were we to review or comment upon all of the cases referred to; hence, we content ourselves with such authorities as support the principles which, in our opinion, are controlling upon the questions involved in this cause. It is a well affirmed general rule, that the laws of a sister state, which either give or deny the power to contract, have no extra-territorial force or effect where the particular contract involved relates to the conveyance or encumbrance of lands situated in another state or jurisdiction. *Cochran* v. *Benton*, 126 Ind. 58, and authorities there cited. Such conveyances or encumbrances are considered as being governed by the law of the *situs* of the realty, and all questions relating to the validity thereof are to be determined according to that law and not according to the law of the place of the contract or of the domicil of the contracting parties. 6 Thompson on Corp., section 7721; Jones on Mort., section 823; Wharton on Conflict of Laws, sections

273, 274; *Boehme* v. *Rall*, 51 N. J. Eq. 541, 26 Atl. 832, and authorities there cited.

Another rule is that it is the restrictions or prohibitions contained in the charter of a foreign corporation or those of the governing laws of the state where it is organized, in relation thereto, which follow it into another state. It is such restrictions or prohibitions, as a general principle, and these alone, which, under the rules of comity, are recognized and enforced in other jurisdictions, and not the general legislation or judicial decisions of the state in which such corporation is organized. 'The general laws, regulations or decisions of the courts of a sister state are controlling only within its own limits, and such state has no power to give them force or effect in other jurisdictions. 2 Morawetz on Corp., section 967; *Warren* v. *First Nat. Bank*, 149 Ill. 9, 38 N. E. 122, 25 L. R. A. 746, and cases there cited; *Boehme* v. *Rall*, *supra; Borton* v. *Brines-Chase Co.*, 175 Pa. St. 209, 34 Atl. 597.

We have examined the statutes of Ohio, introduced in evidence, which relate to corporations organized thereunder, and we discover nothing therein which can be said to forbid or prohibit an insolvent corporation of that state from mortgaging its corporate property or assets to secure a *bona fide* antecedent indebtedness of its own and thereby prefer one or more of its creditors over others. If it appeared in this case that the mortgages in question were executed in violation of the express provisions of any of these statutes or that the power or right of the company to execute the mortgages depended upon a construction placed upon a statute of that state by its highest court, quite a different question would be presented for our decision. That an insolvent corporation, in like manner as an insolvent natural person, may, at common law, execute a mortgage upon its property to some of its creditors, and thereby create a preference, is a well settled proposition. See Cook on Stock and Corporation Law, section 779; Angell & Ames on Corp., section 187, page 168; 2

Morawetz on Corp., section 802; 1 Beach on Corp., section 358; *Levering* v. *Bimel*, 146 Ind. 545. Blackstone, in his commentaries, asserts that it is necessarily and inseparably incident to every corporation aggregate that it has the power to sue or be sued, implead or be impleaded, grant or receive by its corporate name, and do all other acts as may a natural person. 1 Blackstone's Commentaries (Cooley's ed.) * page 475. In 2 Cook on Corp., section 691, it is said: "Corporations, unless restricted by their charters or by general statutes, may make assignments for the benefit of creditors to the same extent that individuals may. In making the assignment, the corporation may make preferences for one or more creditors over others, or of one class of creditors over other classes. A preference by the directors of themselves is generally held to be fraudulent." By section 3879 R. S. 1881, section 5098 Burns 1894, the legislature of this State has removed all doubt as to the right or power of a foreign corporation, organized for a like purpose as the one in this case, to acquire lands in this State and mortgage the same. This statute is an affirmative permission by the State to foreign corporations, organized for manufacturing and mining purposes, to purchase and hold real property in this State for the purpose of its business and to convey or mortgage the same, as corporations of this State, organized for similar purposes, may do. It is true that this statute is not intended to confer any power or right upon a foreign corporation which is denied to it by its charter or the governing laws of the place of its organization and domicil. As to the rights mentioned in the statute cited, it is simply permissive and may be said to be but a recognition of the rules of comity existing between sister states. There is no question but what the indebtedness secured by these mortgages is a legitimate and *bona fide* one in all respects and is such as the company was fully authorized, under the laws of Ohio, to contract or incur. Neither can it be said that a preference, created thereby in favor of Strasburger and Levi, was

a part of the assignment made by the company on August 6, 1895. That assignment, as we have seen, was adjudged by the lower court to be invalid, and of no effect, so far as it attempted to assign or transfer property owned by the company situated in Dearborn county, Indiana; and the mortgaged premises apparently remained under the dominion of the company, after the execution of the mortgages, for a period of over six months, until the appointment of the receiver by the Dearborn Circuit Court on February 22, 1896. The power of this corporation, under the circumstances, to make the mortgages and thereby prefer these creditors over others, is not prohibited, as we have seen, by the statutes of its own state; neither is it denied by the rules of the common law nor the laws of this State. The *situs* of the mortgaged premises being in Indiana, it is evident, under the circumstances, that the parties to the mortgages, at the time of their execution, must have contemplated their enforcement, if necessary, in the courts of this State. If these mortgages are to be adjudged invalid and the right of appellants to enforce them denied by the courts of this State, these results must follow by virtue of the rule announced and adopted by the supreme court of Ohio in *Rouse* v. *Merchants Nat. Bank,* 46 Ohio St. 493. In that decision, the court did not construe or interpret any statute of that state in relation to the execution of a mortgage by an insolvent corporation. The court therein expressly recognized the fact that decisions of the higher courts of other jurisdictions are conflicting in respect to the question in dispute in that appeal, and the court expressly admits that it is one of first impression so far as that court is concerned, and therefore, it is said, that it is at liberty to adopt the rule which, in its judgment, best coincides with justice and right. The rule adopted by the court in the case in question, and the one which controlled the question therein involved, is but an application of the equitable principle which arises out of what is denominated "The trust fund

doctrine." The foundation upon which this rule or doctrine, as recognized in the Rouse case, and which now prevails in Ohio and other states, is said to rest, is that the assets or property of a corporation, when it becomes insolvent and has ceased to be a going concern, *eo instante* become a trust fund for the benefit of its creditors and, under the circumstances, its officers, being trustees for all of its creditors, cannot lawfully dispose of or encumber the property otherwise than for the equal benefit of all of its creditors. This doctrine or rule does not prevail in this jurisdiction and this court has declined to accept or enforce it. See *Henderson* v. *Indiana Trust Co.*, 143 Ind. 561; *First Nat. Bank, etc.,* v. *Dovetail, etc., Co.,* 143 Ind. 534; *Levering* v. *Bimel*, 146 Ind. 545; *First Nat. Bank, etc.,* v. *Dovetail, etc., Co.,* 143 Ind. 550. In the case last cited, on page 553 of the opinion, this court said: "The expression that 'the property of a corporation constitutes a 'trust fund' for its creditors,' only means that when the corporation is insolvent and a court of equity has taken possession of its assets for administration, such assets must be appropriated to the payment of its debts before distribution to its stockholders, but as between the corporation itself and its creditors, the corporation does not hold its property in trust or subject to a lien in favor of the creditors in any other sense than does an individual debtor." In the appeal of *Levering* v. *Bimel*, 146 Ind. 545, on page 553 of the opinion, we said: "As between the corporation and its creditors, it cannot, in reason, be said that the relation is anything more than that of debtor and creditor. The relation of trustee and *cestui que trust* does not exist so as to create a lien upon its assets in favor of the creditor, in any other sense than applies to an individual debtor." While the decision of the Ohio court, in the case in controversy, is controlling in that jurisdiction upon like questions, when presented, it, as we have seen, can have no extra-territorial effect. It has merely a local application, and the courts of this State are not required to follow it and, by reason thereof, de-

clare invalid the mortgages in dispute, and deny appellants' right to enforce them. In addition to the authorities heretofore cited on this point, see *Rhawn* v. *Pearce*, 110 Ill. 350.

While we may and do yield great respect to the decisions of the supreme court of Ohio, still we are not bound to accept them as governing us in the administration and application of legal or equitable principles. It is true that the construction placed upon a statutory law by the courts of its own state, will, by virtue of the rules of comity, be followed by the courts of a sister state in cases in which such statute may be involved, but, as heretofore stated, the construction of a statute was not involved in the Rouse case, but the question presented to the court in that appeal depended for its solution upon the view which the court might take in regard to the equitable rule or trust fund doctrine. It is certainly manifest and well supported by authority that neither the principles of equity nor the common law, as they may be expounded by the supreme court of Ohio, are binding upon this court, but, in the administration of justice, we must adhere to and follow our own decisions or precedents in which such principles are exposed or expounded so far, at least, as we consider such decisions sound and correct. This rule is well affirmed by the courts of other states. *St. Nicholas Bank, etc.,* v. *State Nat. Bank,* 128 N. Y. 26, 27 N. E. 849, 13 L. R. A. 241, and cases there cited.

The fact that the creditors in this cause are nonresidents of this State, and citizens of the state of Ohio, can exert no influence over the question as here presented. By the rule approved by this court in *Catlin* v. *Wilcox, etc., Co.,* 123 Ind. 477, 8 L. R. A. 62, it is asserted that when a citizen of another state is once properly in court and accepted as a suitor, neither the law nor the court administering the law, will admit any distinction between such a suitor and one who is a resident or a citizen of its own state. "Before the law and its tribunals, there can be no preference of one over the other."

Tested by the rules prevailing in this State, as expounded and settled by our own decisions, relative to the validity of mortgages given in good faith by an insolvent corporation upon its corporate property, to secure a *bona fide* antecedent indebtedness, we are constrained, under the facts, to uphold the validity of the mortgages in controversy. Under the evidence, the judgment of the lower court ought to have been in favor of appellants upon the issues tendered by the cross-complaints. The judgment rendered by the trial court in favor of appellee upon the issues joined upon appellants' cross-complaints, is therefore reversed, and the cause is remanded to the lower court with instructions to grant appellants a new trial and for further proceedings not inconsistent with this opinion.

Baker, J., did not participate in this decision.