STATE, EX REL. MUTUAL PROTECTIVE LEAGUE,
*v.* BIGLER, AUDITOR OF STATE.

[No. 20,825. Filed October 30, 1907.]

1. CORPORATIONS.—*Beneficial Associations.—Foreign.—Right to Do Business.—Statutes.—*A foreign, fraternal, beneficial association, maintaining no lodges and giving its secret work privately, and which employed deputies at a salary, requiring them to do a cer-

tain amount of business on penalty of discharge, does not conform to §5050a Burns 1901, Acts 1899, p. 177, §1, requiring such associations to have "a lodge system, with ritualistic form of work," or to §5050k Burns 1901, Acts 1899, p. 177, §11, prohibiting such associations, with certain exceptions, from employing paid agents. p. 226.

2.  CORPORATIONS.—*Foreign.—Legalization of.—Fraternal Associations.*—Whether foreign, fraternal, beneficial associations are regarded as foreign, or whether, under §5050b Burns 1901, Acts 1899, p. 177, §2, providing that such companies, if now doing business in this State, may continue to do so, by complying with the provisions of such act, they should be regarded as domestic, they are not authorized to do things which similar local associations are prohibited from doing. p. 227.

3.  MANDAMUS.—*Auditor of State.—Licensing Foreign Corporations.—Compliance with Statutes.*—Mandamus does not lie to compel the Auditor of State to license a foreign, fraternal, beneficial association to do business in this State, where such association has failed to comply with the statutes governing same. p. 228.

From Superior Court of Marion County (69,152) ; *Vinson Carter,* Judge.

Action by the State of Indiana, on the relation of the Mutual Protective League, against Warren Bigler, as Auditor of State of the State of Indiana. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*Pliny W. Bartholomew* and *W. A. Northcott,* for appellant.

*James Bingham,* Attorney-General, *Henry M. Dowling, Edward M. White* and *Alexander G. Cavins,* for appellee.

GILLETT, J.—This was a proceeding by way of mandate to compel the Auditor of State to license relator to do business in this State, as a fraternal, beneficiary association, for the year then next ensuing. Issues were joined, and, after a hearing, the peremptory writ was denied.

It appears from the evidence that the relator is chartered as a fraternal, beneficiary association under the laws of Illinois, and that it was doing business in this State at the time of the enactment of the act of March 1, 1899. §5050a *et seq. Burns* 1901, Acts 1899, p. 177, Acts 1901, p. 312. The

testimony of the president of relator showed that it had established what it termed an emergency council in the state of Illinois. This council had about three hundred members, a majority of whom were members who had moved away from their home councils. Relator employed agents, or, as they were termed, deputies, some of whom were paid a salary and others a commission, to establish new councils. Where a deputy had gotten a number of persons together, and some of them failed, while others desired, to be initiated, and there was reason to believe that at some time a council might be organized at that place, the association regarded it for the good of the order to receive the latter, and to enroll them in some established council, either one near by or in the emergency council referred to. In that event the deputy would give the applicant the unwritten work, including the signs, passwords, etc. When asked whether this would be done in a cornfield or barn, the witness answered: "Any place that was secret." So far as indicated by its by-laws, it would seem that the beneficial, or, perhaps, it might be termed the insurance, feature of relator's organization is the leading one. The witness referred to testified that a deputy who was working on a salary was expected to do a certain amount of business, or his services would be discontinued.

By §5050a, *supra,* it is required that fraternal beneficiary associations "shall have a lodge system, with ritualistic form of work." "Such associations," the section declares, "shall be governed by this act and shall be exempt from the provisions of the insurance laws of this State." Section 5050b, *supra,* authorizes associations incorporated in another state, falling within the description set forth in the prior section, which were doing business in the State at the time of the enactment of the statute, to continue such business, provided they comply with the provisions of the act concerning the making of annual reports to the Auditor of State, and designate him as a person upon whom process may be served.

By §§5050d, 5050f, *supra,* which apply to associations of the character of relator, provision is made for the licensing of such associations to do business in this State from year to year. Section 5050k, *supra,* which follows sections making provision for the incorporation of fraternal, beneficiary associations in this State, provides: "Such associations shall not employ paid agents in soliciting or procuring members, except in the organization or building up of subordinate bodies or granting members inducements to procure new members." It appears from the evidence offered by relator that there is a like provision in the act under which relator is incorporated.

It is quite clear to us that relator has been guilty of a violation of both the letter and the spirit of §5050a, *supra,* which requires that such associations shall have a lodge system, with ritualistic form of work. It is unnecessary for the purposes of this case to attempt a differentiation of ordinary insurance and the benefits granted by fraternal organizations. It suffices now to state that it was evidently the legislative contemplation that the spirit of fraternity among the members of such associations afforded such a check in the administration of their beneficiary funds as to warrant the establishment of such associations without surrounding them with all of the safeguards which have been thrown about the business of insurance, in which the parties deal at arm's length. In other words, the provision of the statute concerning the maintenance of the lodge system with ritualistic form of work is a condition of the grant of power, and is one which such an association is not at liberty to disobey. Upon this point, we are of opinion that the provision of the statute should be rigidly adhered to, for in matter of substance it is the fraternal feature of these associations which constitutes one of the leading distinctions between them and mutual insurance companies. The course pursued by relator would in some degree tend to break down an intended legislative check upon the safeguarding of its

State, ex rel., *v.* Bigler—169 Ind. 223.

funds, and, if winked at, would afford a constant temptation to associations of like character to honor the statute in the breach rather than in its observance.

It also appears to us that in another particular relator is calling on the court to admit it to do business in contravention of the domestic policy of this State, and also, if we may regard the evidence offered by its counsel, in contravention of its own charter restrictions. We refer to the employment of agents who, as stated above, are permitted to enroll members who have no substantial relation to the association as a fraternity. Whether associations of this character, which are organized under the law of another state, but which were doing business here when the statute was passed, are to be regarded as foreign corporations, or, by virtue of the statute, as domestic corporations *quoad hoc,* yet the legislative comity which the statute expresses in authorizing them to do business in this State is not without restriction, and should be limited by construction, so that an association may not, by the taking up of a local habitation, pursue a course which would at once be to do what is prohibited to local associations of like character and to violate the law of its own existence. In discussing the doctrine of comity, as applied to foreign corporations, Judge Thompson says: ''Without attempting to enumerate in a single section all the cases to which this comity does not extend, it may be observed in the first place that it does not extend so far as to concede to foreign corporations the powers which their own charters do not permit them to exercise. Nor so far as to permit a foreign corporation to exercise powers within the state which a domestic corporation of the same kind is not permitted to exercise under the constitution, laws or policy of the state.'' 19 Cyc. Law and Proc., 1224. And see *Nathan* v. *Lee* (1899), 152 Ind. 232, 43 L. R. A. 820.

The course pursued by relator is especially pernicious in its tendency, since the partial abandonment of the lodge feature and the employment of paid agents are brought into

conjunction, thus putting agents under the temptation to solicit individuals nominally to join the association on account of the death benefits paid by it, instead of devoting their efforts to the building up of a system of lodges.

Counsel for appellant contend that as relator had made its report according to law, it was the duty of the Auditor of State to issue a license; that he had no power to 3. enter into an inquiry as to the manner in which relator had done business. This appears to us to be a moot question, in view of the fact that relator is seeking by mandate to enforce the granting of a license. The writ will not issue to promote a wrong, or to compel a compliance with the strict letter of the statute in disregard of its spirit. *Western Union Tel. Co.* v. *State, ex rel.* (1905), 165 Ind. 492, 3 L. R. A. (N. S.) 153; *Funk* v. *State, ex rel.* (1906), 166 Ind. 455; *People, ex rel.,* v. *Board, etc.* (1893), 137 N. Y. 201. As was said in the case last cited: "The relator must come into court with clean hands." When relator has purged itself of that which is objectionable in its manner of doing business, it will be time enough to seek the aid of the courts.

Judgment affirmed.