NATIONAL CARBON CO., Inc., v. BANK-
ERS' MORTGAGE CO. OF TOPEKA,
KAN., et al.

No. 1118.

Circuit Court of Appeals, Tenth Circuit.

May 13, 1935.

Thomas H. Kingsley, of Kansas City, Mo., for appellant.

Otis S. Allen, of Topeka, Kan. (J. D. M. Hamilton, of Topeka, Kan., on the brief), for appellees.

Before LEWIS and PHILLIPS, Circuit Judges, and KENNEDY, District Judge.

LEWIS, Circuit Judge.

Appellant presented its claim in the court below against the Bankers Mortgage Company of Topeka, Kansas, a Kansas corporation then in receivership in said court, and the court on hearing held appellant could not recover. The claim was based on unpaid rental under a lease. In July of 1932 appellant leased to the mortgage company for a term of years the tenth floor of a building in Kansas City, Missouri, for office purposes at an agreed rental of $500 per month. The lease

agreement was executed by both parties. The mortgage company took possession of the premises, made changes and improvements therein at its own expense, paid one month's rent, and thereafter refused to further occupy the leased premises or pay rent. The court dismissed appellant's claim on its conclusion that the lease was illegal and against public policy. The receiver further claims relief from liability, that the lessee was prevented by vis major to take possession.

The mortgage company was organized as a Kansas corporation in 1919 with powers to loan money on real estate, chattel or personal security, and to sell its bonds secured by mortgages. Its charter provided "that the place where its business is to be transacted is at Topeka, Kansas." Several amendments to its charter powers seem to have been made. It sold its obligations, called bonds, in stated amounts, the bonds to be paid for in installments and redeemed by it on demand of holders at greater sums than amounts paid in at stipulated times after issuance, interest being added to payments. Its assets, when the lease was executed, were more than $3,000,000. It had a general office at Topeka, but it did business in many other states, and had branch offices, one at Kansas City, Missouri. It was licensed to do business in that and other states.

In August, 1932, the state of Kansas on relation of its Attorney General instituted a suit against the Bankers Mortgage Company and its officers in the state court at Topeka seeking an injunction to restrain them from removing its general office, its books, records, and the offices of its officers from Topeka, Kansas, to Kansas City, Missouri. Appellant was not made a party to that suit. On September 6, 1932, the state court entered a decree enjoining such removal, and on September 19, 1932, the mortgage company's attorney notified appellant of that decree and in effect advised it that it would not keep its obligations under the lease. A receiver of the mortgage company was appointed on May 27, 1933, and on the last day of October, 1933, he assumed to cancel and terminate the lease. The state court in its decree of injunction recites, "that the parties have agreed that the following judgment should be entered herein: Upon consideration of the issues of this case and the agreement of

the parties that this judgment should be entered, it is by the court adjudged and decreed— * * *"

The court below on hearing the case made findings of fact, among them this:

"The National Carbon Company, Inc., prior to the signing of the lease in controversy learned through its duly authorized agents that The Bankers Mortgage Company intended to move all of its furniture, funds, fixtures, books and records and its Topeka general office to the space leased in the Carbide and Carbon Building," in Kansas City, Missouri.

This finding is repeated. We do not doubt that finding is error because unsupported by proof. Further on that will be given attention. Among other conclusions of law the court made this:

"That said lease in controversy was and is illegal and against public policy, and is not binding on The Bankers Mortgage Company of Topeka, Kansas, or its Receiver."

It further found that performance of the lease by the mortgage company was impossible at the time of its execution and has been impossible since that time.

To sustain the action of the court below in dismissing appellant's claim counsel for appellees rely on certain sections of Revised Statutes of Kansas, 1923, that have relation to a Kansas corporation's office. Section 17—210 provides:

"The charter of a corporation must set forth * * * (3) the place or places where its business is to be transacted. * * *"

Section 17—614. "Every corporation created by or existing under the laws of this state shall have and keep a general office for the transaction of business, and shall keep such office within this state, and shall have at least three of its directors citizens and residents of this state. * * *"

Section 17—615. "Any corporation failing or refusing to obey any of the provisions [of the preceding section] for the period of six months, shall be deemed to have forfeited its charter."

The section following (17—616) provides that all corporations of the state shall keep the office of treasurer, and earnings, income, profits, moneys, collected by any corporation operating under the laws of the state within the state, until the same is disbursed or divided. These

sections are not all of the same legislative session, nor in entire harmony and clear in purpose.

The Board of Directors of the mortgage company at a regular meeting on January 30, 1932, adopted by majority vote this resolution:

"That the executive committee be authorized to rent such office space in Kansas City, Missouri, as it may deem necessary and advisable and to transfer to the Kansas City, Missouri, office of said company, the office furniture and equipment of said company and the employes of said company, except such as may be necessary to conform to the statutes of the state of Kansas and the provisions of the charter of said company, provided that such move not be made before June 1, 1932."

The court below also found that "the majority and controlling stockholders, officers and directors determined to move the general office, records, books and funds of the Bankers Mortgage Company of Topeka, Kansas, from its Topeka, Kansas, office to Kansas City, Missouri, and leave in Topeka only a small organization," and in the furtherance of that purpose said resolution of January 30, 1932, was passed. But that resolution expressly declares a purpose to conform to the statutes of Kansas and the provisions of the charter, which can mean nothing less than an intention to continue to maintain a general office at Topeka. Clearly the Kansas statute on the subject of keeping an office is not a power. It is a regulation. It does not require all its directors to be residents of Kansas. Nor is a Kansas corporation prohibited by statute from having offices in other states in which it transacts business. The statute only declares the consequence to it of maintaining its general office outside that state for six months, viz., forfeiture of its charter. The resolution declared its intention. Nevertheless, within two months after it executed the lease it consented through its counsel and its directors that the decree in the state court enjoining it might be entered. The mortgage company was doing business in Missouri. It apparently thought it needed a larger office there, and no reason appears why it could not have maintained a general office for corporate action in Kansas and at the same time perform its lease contract with appellant as it said it intend-

ed to do in the resolution. Fletcher, Cyclopedia Corporations (Perm. Ed.), vol. 17, § 8357, says:

"Unless excluded by the laws of public policy of the state from doing business therein, a foreign corporation has the power and by comity, the same right as a domestic corporation to take a lease on such property as may be necessary for carrying on its business in the state."

In Blodgett v. Lanyon Zinc Co. (C. C. A.) 120 F. 893, 894, 895, Judge Sanborn, speaking for the court, said:

"In the absence of prohibitive legislation, a corporation of one state is authorized to receive and hold real estate in another state, and to make and execute contracts relative to both real and personal property. The presumption is that the right to contract concerning, to take, and to convey title to, real and personal property, is free."

No law of Missouri prohibited the making and execution of this lease. It was to be performed in that state. It granted an interest in real property in that state. Its validity must be construed by the laws of that state. The Kansas statute was without extraterritorial effect. In Cochran v. Benton, 126 Ind. 58, 25 N. E. 870, 871, the court said:

"Statutes which either give or destroy capacity to contract have, as a general rule, no extraterritorial force, when the particular contract involved relates to the conveyance or incumbering of real estate situate in a foreign jurisdiction."

In Tarpey v. Deseret Salt Co., 5 Utah, 494, 17 P. 631, 634, the court said:

"The power and the right of a foreign corporation to hold and convey property is not to be determined under the laws of the home government under which they are organized, but it is to be determined by the laws of the government in which they are doing business, and in which they acquire the property. * * * By the general comity which exists throughout the United States and territories, in the absence of positive prohibitions, corporations created in one state or territory are permitted to carry on any lawful business in any other state or territory, and to acquire, hold, and transfer property there, equally as individuals. If the policy of a state or territory does not permit the business of the foreign corporation in its limits, or al-

low the corporation to acquire or hold real property, it must be expressed in some affirmative way by the state or territory where the property is acquired."

See, also, Brine v. Ins. Co., 96 U. S. 627, 24 L. Ed. 858; Nathan v. Lee, 152 Ind. 232, 52 N. E. 987, 43 L. R. A. 820; Boehme v. Rall, 51 N. J. Eq. 541, 26 A. 832. Under conditions the mortgage company might have lawfully held its stockholders' meetings at the Kansas City office. Handley v. Stutz, 139 U. S. 417, 11 S. Ct. 530, 35 L. Ed. 227; Missouri Lead M. & S. Co. v. Reinhard, 114 Mo. 218, 21 S. W. 488, 35 Am. St. Rep. 746. It seems clear appellant had a right to give the lease and the mortgage company to accept it, and it was not invalid, void or against public policy.

Relative to a finding of fact made by the court, quoted first supra, this proffered testimony was accepted subject to appellant's objection:

"1. Some time in May, 1932, a question arose as to whether the desks and office equipment of The Bankers Mortgage Company would fit properly into the space the subject of the lease herein. Mr. William R. Bovard, architect of Kansas City, under whose supervision the building had been erected, was agreed upon as a suitable person to make this investigation, by the officers of The Bankers Mortgage Company, and Mr. Barret Guignon, real estate agent who was authorized by the National Carbon Company to procure a tenant for this space, and was also the agent for the collection of rents and general building management for the owner of the property, and he sent a Mr. Emil Forman to Topeka to measure desks and other equipment of The Bankers Mortgage Company and designate how it would fit into the space. Mr. Forman's charges for this work was $42.50, which was paid to him by check of Mr. Barret Guignon out of the money which came into his hands for the payment of real estate commissions earned by reason of the renting of this space.

"2. That the said Forman came to Topeka to the office of The Bankers Mortgage Company in May, 1932, and measured and enumerated all the furniture, fixtures, books and records of The Bankers Mortgage Company in the Topeka general office, for the purposes as stated in the preceding agreement. That the

space in the Topeka office and the space in the Carbon Building, being the subject of the lease in controversy, was approximately the same size."

From this it clearly appears that Mr. Guignon's agency consisted only in collection of rents and general management of the building, the tenth floor of which was covered by the lease. He had no other authority as agent. He sent Mr. Forman to Topeka to measure desks and other equipment of the Bankers Mortgage Company and designate how it would fit into the space on said tenth floor. He had no other duty to perform. Neither was delegated to inquire and ascertain whether the mortgage company was preparing or intending to remove its general office from Topeka to Kansas City. Of course, any information that might have been obtained by Forman in that respect would not be imputed to appellant. There was no tender of proof that Guignon or Forman actually reported anything of the kind to appellant. Had Forman inquired he would in all probability have been referred at that time to the resolution of the Board of Directors of January 30, 1932. This seems to be the basis of the court's finding. The record contains no proof that sustains that finding. And yet, if proven, the finding was immaterial to the validity of the lease. Again it was over-borne by the resolution. As demonstrating the insufficiency of the tendered proof—no other was offered—to sustain said finding it seems sufficient now to only cite section 1831, vol. 2, Mechem on Agency (2d Ed.).

A more serious question arises on the claim of vis major. Bouvier defines the term as a loss that results immediately from a natural cause without the intervention of man and could not have been prevented by the exercise of prudence, diligence and care. It is so accepted in The George Shiras (C. C. A.) 61 F. 300. The early authors treated it as the equivalent to an act of God. Later authority seems to have broadened its meaning to any insuperable interference. Crossman v. Burrill, 179 U. S. 100, 111, 21 S. Ct. 38, 45 L. Ed. 106; Kansas Union Life Ins. Co. v. Burman (C. C. A.) 141 F. 835, 848. The vis major here claimed is the injunctive order of the state court supra. We reject it as a good plea in this case for these rea-

sons: (1) The mortgage company could have occupied the leased premises in compliance with its resolution of January 30, 1932, by holding or renting elsewhere and using sufficient space in Topeka for purposes of a general office and at the same time using the Kansas City office for its other purposes; and (2) It acquiesced in and consented to the injunctive decree entered against it. It aided in the procurement of what it now relies upon as a defence against its liability on the Kansas City lease. Neither in law' nor equity can a litigant take advantage of such duplicitous, unfair and unjust conduct. That defence may be likened to its further contention that the lease was ultra vires. This also is not favored and should never be applied where it works a legal wrong, if such result can be avoided. 4 Encyc. U. S. Sup. Ct. Rep. pp. 745, 748, 755; Tryson v. Southern Realty Corp., 51 App. D. C. 55, 274 F. 135; Kellogg-Mackay Co. v. Havre Hotel Co. (C. C. A.) 199 F. 727, 733. As heretofore said, in our opinion the lease is valid, and the defences are without merit.

Reversed and remanded with directions to allow appellant's claim.