## LEVERING ET AL *v.* BIMEL ET AL.

[No. 17,403.   Filed January 12, 1897.]

CORPORATION.—*May Deal with Its Property as an Individual When Not Restrained by Statute.*—A private corporation, unless restrained by statute, may legitimately deal with its property in the same manner that an individual deals with his.

MORTGAGE.— *Preferences.*—Where a mortgage or other security is given to secure an honest debt, and is in a *bona fide* manner accepted for that purpose, the fact that the giving and accepting of such security may result in defeating the claims of other creditors, affords no legal or equitable grounds for complaint on the part of the latter.

CORPORATION.— *Insolvency.*—*Trust.*— *Creditors.*—An insolvent corporation does not hold its property in trust or subject to a lien in favor of creditors in any other sense than does an individual debtor.

SAME.—*Insolvency.*—*Preferences.*—*Directors.*—A preference made by an insolvent corporation to some of its directors, who voted in favor thereof, is not invalid where the vote of such directors was not necessary to the passage of the resolution authorizing the preference.

From the Tippecanoe Superior Court. *Reversed.*

VOL. 146—35

*Stuart Bros. & Hammond* and *Kumler & Gaylord,* for appellants.

*Wallace & Baird, Caldwell & Caldwell, Corwin & Smith, G. P. Haywood* and *G. J. Eacock,* for appellees.

JORDAN, C. J.—The questions involved in this cause arise out of the proceedings of the trial and judgment in the lower court in adjudicating claims of the creditors of the O'Brien Wagon Company, a corporation organized under the laws of this State, and engaged in the manufacture and sale of wagons in the city of Lafayette. On August 10, 1893, this corporation being insolvent, was placed in the hands of a receiver by order of the lower court. Appellant, Levering, holder of a certain alleged note against said corporation, which he held as trustee of the First National Bank and the Merchants' National Bank of Lafayette, Indiana, filed his intervening petition in the cause in which said receiver was appointed, wherein he averred that said note of $39,400.00 which he so held was secured by a chattel mortgage executed by said company, and he asked that this mortgage be foreclosed and that the proceeds of the sale of the mortgaged property be ordered by the court to be first applied to the payment of this claim. At the same time his co-appellant, Lucy A. Kaull, filed a like petition, in which she alleged that she held a note against said company for $48,360.00, secured by a mortgage upon its real estate, and by a chattel mortgage upon certain personal property, etc.

Appellees, being unsecured creditors of the corporation, were by the court permitted to appear and file answers to these intervening petitions, and to defend against said claims and mortgages. Upon these petitions, and the respective answers and replies of the

Levering *et al. v.* Bimel *et al.*

parties, the issues were joined, and the cause was tried by the court. There was a special finding of facts, and by its conclusions of law thereon, the court held that the note and mortgage held by Levering were illegal and void, and also that the note and mortgages held by Mrs. Kaull were illegal, and that the action of the corporation in assigning certain notes and accounts to her as collateral security, was illegal and void, and judgment was rendered accordingly.

The facts material to the principal questions involved appear from the special finding to be substantially as follows: On July 14, 1890, the O'Brien Wagon Company was duly incorporated at Lafayette, Indiana, with a capital stock of $100,000.00, the object of said corporation being to manufacture and sell wagons at said city. Before the incorporation of this company it operated and carried on its business at Tiffin, Ohio, as a partnership, but was induced to locate at Lafayette, where, as before stated, it was incorporated under the general laws of this State. On August 7, 1893, this corporation was indebted, as the court finds, to the First National Bank of the city of Lafayette, Indiana, as follows:

On ten notes executed by the wagon company to said bank for borrowed money...$11,500.00

On five notes, executed by the wagon company to F. M. Ward, and endorsed by him to said bank...... 3,790.40

On one note executed by the wagon company to Frey, Reiff & Co., and by them endorsed to said bank.................. 189.15

All of which it is found, with interest, amounted, on August 7, 1893, to........$16,139.46

On endorsement of other notes............ 9,396.83

Total ...............................$25,536.29

Levering *et al. v.* Bimel *et al.*

On nine of the notes first mentioned Burt J. Kaull was a surety for the company, and Richard Carpenter was a surety for the company on the other note of said ten. Carpenter and Kaull being at the time directors of said corporation; the former being the president and the latter secretary. It is further found that on the date last mentioned, the company was also indebted to the Merchants' National Bank of said city as follows:

On four notes executed by the wagon company to said bank for borrowed money... $ 7,623.79
On two notes executed by the wagon company to Frey, Reiff & Co., and by them endorsed to said bank.................... 874.54
On endorsements of promissory notes...... 7,572.12

    Total ...............................$16,070.45

On the four notes first named said Burt J. Kaull was also surety for the company.

The court also finds: "That all the indebtedness from said corporation to said banks was for money on direct loans to said corporation or for discount of commercial paper, governed by the law-merchant, during the months of April, May, June and July, 1893, and while said corporation was carrying on its business, and that all of said money was used by said corporation in the ordinary course of business."

On August 9, 1893, Lucy A. Kaull, appellee, it appears, held certain notes or claims against said corporation, which aggregated $48,360.10, part of it being for money advanced and loaned by her to the corporation. That all of the notes held by Mrs. Kaull were signed by said Burt J. Kaull, as surety, he being the son of the former and a director of said company at the time the notes were executed by it to his said mother. As to these notes the court finds that on said

9th day of August, there was only due to Mrs. Kaull from said corporation the sum of $24,368.41, and no more. That as to the remainder of her said claim the company had received no consideration for the execution of the notes and that the same were executed without authority from its board of directors. On the 7th day of August, 1893, the corporation, by its board of directors, authorized the execution of a note for all of the preexisting indebtedness due from it to said banks, together with a mortgage on the personal property of the company to secure said note, and that immediately thereafter the note for $39,400.00 and the mortgage to secure the same, as set out in Levering's petition, were executed to him by the president and secretary, and Levering thereupon executed a declaration of trust to both of said banks. That before the execution of this note and mortgage these banks surrendered to Levering all the notes held by them upon which the company was liable. That on August 9, 1893, the company, by its board of directors, authorized the execution of a note, and a mortgage to secure the same, to Lucy A. Kaull for the indebtedness held by her against the corporation, and in pursuance thereof the note and mortgages set up in her petition were executed to her by the corporation. The execution of the notes and mortgages to Levering and Mrs. Kaull was authorized by the unanimous vote of all the directors, being five in number, and the execution of these notes was also approved by the stockholders of said corporation. Payments on the note to Levering were made after its execution and before the trial of the cause, which reduced the amount due when the judgment was rendered to $31,667.95. At the time of the execution of the mortgages in dispute, Carpenter was insolvent, and Burt J. Kaull had no property in this State, but owned some outside of Indiana. It is

also found that the latter was the agent of Mrs. Kaull in obtaining the mortgage set out in her petition. That on the 7th and 9th of August, 1893, said corporation was insolvent, which fact was known to its officers, and that Mrs. Kaull also knew at the time of the execution of the note and mortgage to her of its insolvency. That on the 9th day of August, 1893, Eugene N. O'Brien, a stockholder and one of the directors, a few hours after the execution of the mortgage to Mrs. Kaull, filed a petition to have a receiver appointed for said corporation, and that it, on the next day, appeared by its attorneys and consented to the appointment of a receiver, and that thereupon a receiver was appointed by the court, that he duly qualified and assumed the duties of his trust. It is further disclosed by the finding that each of said banks, at the time of the execution of the mortgage, knew that Burt J. Kaull and Carpenter were directors of the corporation and liable as sureties on said notes. On August 2, 1893, a part of the employes of said company quit work on account of the reduction of wages, and thereafter only a few men were employed for the time being in finishing work and in the shipping department. That on said 7th day of August, the assets of said corporation were $75,000.00, and its direct liabilities $116,368.00, and its contingent liabilities $20,0000.00.

Other facts are found, some of which are more in the nature of conclusions than a finding of facts. Fraud, however, as a fact is not found by the court in its special findings. Neither is it in any way disclosed that the amounts found due to the appellees respectively by the court were not *bona fide* preexisting indebtedness against said corporation at the time of the execution of the mortgages. It is conceded by appellee's learned counsel that the findings and conclu-

sions of law as made and stated by the court do not proceed upon the theory of actual fraud in fact, but upon the theory that the notes and mortgages in question, and also the assignments of certain notes and accounts to Mrs. Kaull as a collateral security, as found by the court, were illegal and void by reason of the facts stated in the special finding. The contention of counsel for appellees, as stated by them, is that:

"A corporation organized under the laws of this State, after it has become insolvent and has abandoned the further prosecution of its business, cannot mortgage or pledge its property for the sole purpose of giving some of its creditors a preference over others in the distribution of its assets, especially if such preference inures to the personal benefit of some of the directors of such corporation."

They admit that an insolvent corporation may secure some of its creditors by mortgage or otherwise, provided it be a going concern and the security is given for the purpose of enabling it to prosecute its business and with the expectation that it will continue to do so. It is true, they say, that a natural person may make any honest disposition of his property, but a corporation in this State can do only what it is expressly authorized to do by the law under which it is created and operates, and such other acts as are essential to carry into effect the powers granted.

The learned counsel for the appellants, on the other hand, insist that the rights of a corporation, in regard to preferring its creditors, must be the same as natural persons, and that the notes and mortgages under the facts in this case must be held valid and enforceable obligations, at least to the amount found to be due by the court. This question then, as asserted and denied by the parties to this appeal, may be said to be the cardinal one presented for our decision. The

decisions of this court recognize the rule that a private corporation, unless restrained by statute, may legitimately deal with its property in a manner similar as an individual deals with his. *Bristol, etc., Co.* v. *Probasco*, 64 Ind. 406; *Ward v. Polk*, 70 Ind. 309; *Wright* v. *Hughes*, 119 Ind. 324, 12 Am. St. 412; *De-Camp* v. *Alward*, 52 Ind. 468; *Park, etc., Coal Co.* v. *Terre Haute Paper Co.*, 129 Ind. 73; *Hill* v. *Nisbet*, 100 Ind. 341.

A natural person has absolute dominion over the disposition of his property, provided such disposition does not result in defrauding his creditors. Under this right an insolvent debtor may, in good faith, prefer one or more of his *bona fide* creditors to the exclusion of others. Where a mortgage or other security is given to secure an honest debt, and is in a *bona fide* manner accepted for that purpose, the fact that the giving and accepting of such security may result in defeating the claims of other creditors, affords no legal or equitable grounds for complaint upon the part of the latter. This doctrine is settled in this State by many decisions, of which the following are a part. *Lord* v. *Fisher*, 19 Ind. 7; *Wilcoxon* v. *Annesley*, 23 Ind. 285; *Ball* v. *Barnett*, 39 Ind. 53; *Cushman* v. *Gephart*, 97 Ind. 46; *Grubbs* v. *Morris*, 103 Ind. 166; *Gilbert* v. *McCorkle*, 110 Ind. 215; *Hays* v. *Hostetter*, 125 Ind. 60; *Straight* v. *Roberts*, 126 Ind. 383; *Carnahan* v. *Schwab*, 127 Ind. 507; *Dice* v. *Irvin*, 110 Ind. 561; *Fuller and Fuller Co.* v. *Mehl*, 134 Ind. 60.

Blackstone, in his Commentaries, says that it is necessarily and inseparably incident to every corporation aggregate that it has power to sue, or be sued, implead or be impleaded, grant or receive by its corporate name, and do all other acts as a natural person may. Blackstone's Comm. (Cooley's ed.), Vol. 1, star p. 475.

In Angell & Ames on Corporations, section 187, p.

168, it is asserted that independently of positive law, all corporations have the absolute *jus disponendi* neither limited as to objects nor circumscribed as to quantity.

Morawetz in his Law on Private Corporations, Vol. 2, section 802, says that in the absence of a statutory prohibition, a corporation has the same power of making preferences among its creditors as an individual.

Beach in his work on Corporations, Vol. 1, section 358, says, that a corporation, unless prohibited by law, may sell and transfer its property and may prefer its creditors, although insolvent even when all of its property be conveyed in the payment of a single debt, leaving other creditors unpaid.    The fact that a solvent corporation, under the law, in this State has the power to borrow money and secure the payment thereof by mortgage, on its property or otherwise, the same as an individual, is not controverted by appellees.    Upon what reasonable grounds then, can it be said that an insolvent corporation, in the absence of legislation to the contrary, has not the power, under like circumstances as an insolvent, natural person, to make a preference among its *bona fide* creditors?    Appellees, however, seek to show a distinction by invoking the trust fund doctrine, which is recognized by the courts in some of our sister states, upon the theory apparently that the directors of a corporation are the trustees for all of the creditors.    As between the corporation and its creditors, it cannot, in reason, be said that the relation is anything more than that of debtor and creditor.    The relation of trustee and *cestui que trust* does not exist so as to create a lien upon its assets in favor of the creditor, in any other sense than applies to an individual debtor.    This court recently had the question of this trust fund doctrine presented for its consideration, and declined to accept it as it is urged now by the appellees.    We held that it did not exist

before a corporation is placed under the control of a court for adjustment of its affairs; that until such an event happens, no special lien upon its assets or property exists in favor of any creditor or class of creditors, and that the corporation, prior to such an event, had the power, and right to prefer its creditors in like manner and under like circumstances as individuals or co-partnerships may do.

This rule must now be considered as settled in this jurisdiction. See *Henderson* v. *The Indiana Trust Co.*, 143 Ind. 561; *First Nat'l Bank, etc.* v. *Dovetail Body, etc., Co.*, id. 534, 550, and the many authorities cited in the opinions.

By these decisions it is also, in effect, held that an insolvent corporation is not to be denied the right to prefer a creditor or creditors, when such preference does or may inure to the benefit of some of its officers who are sureties upon the claims of the creditors preferred. It being true, then, as a legal proposition, that an insolvent corporation may, in like manner as a natural person, prefer its creditors, upon what logical or reasonable grounds can it be said that a holder of a *bona fide* indebtedness against the former cannot be preferred, for the reason that some of the directors are the sureties for the corporation for the payment of said indebtedness? See *Worthen* v. *Griffith*, 59 Ark. 562, 28 S. W. 286, 43 Am. St. 50.

The broad doctrine that the officers of a corporation cannot in their own names contract with it is unreasonable. Such a holding would virtually deny to corporations the credit upon which their business may be transacted. If the right of the stockholders and officers of a corporation to advance money to it to carry on its affairs, or to endorse for it to obtain money for such purpose, is denied, it would result in depriving the corporation of its most ready and frequent source

of credit. If directors can lend money to the corporation, or endorses for it, under the laws in this State, they should certainly have the right to collect their debt or be secured therein as is accorded by the law to other creditors. *Schufeldt* v. *Smith*, 131 Mo. 280, 31 S. W. 1039, 29 L. R. A. 830, 52 Am. St. 628.

Where, however, an officer of an insolvent corporation is preferred, the rule properly asserted by the authorities is, that such act, when assailed, should be closely scrutinized by the court, and the burden will be cast upon the preferred officer to establish that he held a *bona fide* debt against the corporation. *Schufeldt* v. *Smith*, *supra*, and authorities there cited.

While it may be said that if a corporation is allowed to make preferences that will inure to the benefit of its officers, that this will enable the latter, by reason of the position which they occupy, to outstrip the other creditors in the race of diligence in collecting or securing claims. This fact, however, cannot be deemed sufficient to deny it the right to prefer its creditors. An individual debtor may prefer his wife, or any other member of his family, provided, of course, the preferred debt is an honest one. No more equity or reason appear for allowing an individual to do this, than in permitting a corporation to prefer its own stockholders or officers. It is true that they have an advantage over others in this respect, but this vantage ground results from their position, and is known to every one who deals with the corporation or extends it credit. See *Buell* v. *Buckingham & Co.*, 16 Ia. 284.

As said by Judge Dillon, in this latter case: "Being an officer in the corporation did not deprive Buell of the right to enter into competition with other creditors and run a race of vigilance with them, availing himself in the contest, of his superior knowledge and of the advantage of his position, to obtain security

for, or payment of, his debt." All preference by insolvent debtors are inequitable. They result in favoring one creditor over another, equally entitled to such favor or preference. The insolvent person is generally prompted by his own feelings to prefer his friends; in fact, the rule which permits insolvents to prefer their creditors has resulted in much evil, but it is so firmly established that it cannot consistently be overthrown by judicial action, but the legislative department should interpose and regulate and control this right by statute.

The decisions of this court upon the question of preference by an insolvent corporation and the holding that the trust fund doctrine applied to the extent insisted upon by appellees, cannot be upheld, are in harmony with the great current of decisions, both of state and federal courts.

In addition to those cited in the opinions of this court in the previous cases, we cite the following: *Worthen* v. *Griffith, supra; Shufeldt* v. *Smith, supra; The Waggoner, etc., Co.* v. *Zeigler, etc., Co.,* 128 Mo. 473, 31 S. W. 28; *Bank of Montreal* v. *Potts, etc., Lumber Co.,* 90 Mich. 345, 51 N. W. 512; *Meyer* v. *American, etc., Co.,* 130 Mo. 188, 32 S. W. 300; *Thompson-Houston, etc., Co.* v. *Henderson, etc., Co.,* 116 N. C. 112, 21 S. E. 951; *Planters Bank* v. *Whittle,* 78 Va. 737; *Lexington, etc., Ins. Co.* v. *Page,* 17 B. Mon. (Ky.) 412, 66 Am. Dec. 165; *Coats* v. *Donnell,* 94 N. Y. 168; *Santa Cruz, etc., R. R. Co.* v. *Spreckles,* 65 Cal. 193, s. c., 3 Pac. 661; *Sargent* v. *Webster,* 13 Metc. (Mass.) 497; *Catlin* v. *Eagle Bank,* 6 Conn. 233.

Neither of the appellants in this appeal were stockholders or officers of the corporation, but strangers thereto, hence the question of a preference by an insolvent corporation to its own officers for debts held by them against such concern is not directly involved,

and consequently the reasoning and holding herein must be limited to the fact in this respect, that the directors in question were but sureties upon the claims preferred.

It is also insisted by appellees that the fact that the preferences in the case at bar were authorized by the votes of the two directors who were the sureties upon the notes of the preferred creditors rendered the mortgages illegal. But the execution of the mortgages, as it appears, was authorized by the unanimous vote of the five directors, being the entire directory. Consequently, a majority of the directors, constituting a quorum, by their votes authorized the preference, independent of the votes of the two who were the sureties, therefore, the principle asserted in the case of *Buell* v. *Buckingham & Co., supra,* would apply. It was held in that case that a preference made by an insolvent corporation to its president, by a vote of its directors, sufficient without counting the vote of the former, was valid.

The facts do not establish that the corporation in question took any steps itself to apply for a receiver when it executed the mortgages in dispute. Neither does it appear that the placing of the concern in the hands of a receiver and the act of preferring the claims of appellants were a part of the same transaction, so as to bring it within the principle affirmed in *Shillito Co.* v. *McConnell,* 130 Ind. 41.

It is disclosed by the finding that the money loaned by the banks and Mrs. Kaull to this company was loaned at a time when it was carrying on its business. We fail to recognize anything under the facts that will take these preferences to the appellees out of the protection of the rule which we sustain and adhere to, relative to the right of an insolvent corporation to prefer its creditors in like manner as a natural person.

Fisher, Admr., *v.* Louisville, etc., Railway Company.

As the judgment must be reversed as to both of the appellants for the error of the court in holding the mortgages in controversy invalid, we do not determine the question, under the evidence, as to the consideration of that part of Mrs. Kaull's claim disallowed by the court. There is such a controversy as to the amounts that should be allowed to both of the appellants, that we are of the opinion that justice can be best subserved by ordering a new trial upon all of the issues.

The judgment as to both of the appellants is therefore reversed, and the cause is remanded to the lower court, with directions to vacate its judgment and grant appellants a new trial, and for further proceedings not inconsistent with this opinion.