## BOSSERT v. GEIS, RECEIVER.

[No. 9,118. Filed December 18, 1914.]

1. APPEAL.—*Assignment of Errors.—Questions Presented.*—Where the record shows no demurrer to separate specifications in exceptions to the report of a receiver, and discloses no exceptions saved other than to the ruling on the demurrer to the exceptions as a whole, no question is presented by the assignment of error in the sustaining of the demurrer to each separate specification of such exceptions. p. 389.

2. APPEAL.—*Judgments Appealable.—Order for Payment of Money.* —An appeal may be taken from an order for the payment of money. p. 389.

3. RECEIVERS.—*Pleading.—Exceptions to Report.*—Where exceptions are filed to the report of a receiver, the report stands as the complaint and the exceptions as the answer thereto, and the sufficiency of such exceptions may be tested by demurrer. p. 389.

4. RECEIVERS. — *Exceptions to Report.— Sufficiency.*— Exceptions filed to the report of a receiver of a corporation, objecting to the allowance of a claim of the heirs of its former president for money advanced by him, on the ground that he as president procured the money from himself without any action of the board of directors relating thereto, in effect admit that the money was received and retained by the corporation, and are therefore insufficient to show its nonliability. pp. 390, 392.

5. RECEIVERS.—*Exceptions to Report.—Sufficiency.*—To be sufficient, exceptions to the report of a receiver must present a complete defense to the item or claim objected to. p. 390.

6. CORPORATIONS.—*Debts.—Money Borrowed from Officers.—Liability.*—A corporation may borrow money from its officers or directors for the carrying on of its business or the payment of its debts, and the latter may enforce collection of the money so borrowed, but, if the transaction be questioned, the conduct of the lender will be closely scrutinized to determine if his claim is *bona fide* and that he has not abused the power of his position to obtain an unfair advantage over other creditors. p. 391.

7. CORPORATIONS.—*Contracts With Officers.—Validity.*—The contracts of an officer of a corporation with the corporation, and not duly authorized, are generally voidable at the option of the corporation, and relief therefrom may be had in a timely and proper action by the corporation, or a stockholder, and perhaps in some situations by persons having rights or interests adversely affected; but, if such contracts are free from actual fraud, they cannot be avoided without restoring the money paid or value received by the corporation.   p. 391.

8. CORPORATIONS.—*Contracts With Officers.—Cancellation.—Rights of Creditors.*—The right to set aside a voidable contract entered into between an officer of a corporation and the corporation may be invoked by a creditor, but not without showing that the transaction complained of has lessened the ability of the corporation to pay its debt.   p. 392.

9. CORPORATIONS.—*Officers.—Authority of President.—Power to Incur Debts.*—Generally the president of a corporation has no power to bind the corporation by incurring indebtedness, or by his signature to commercial paper, unless authority to do so has been expressly conferred, or has arisen from a course of conduct by him in such matters for a long time with the knowledge and acquiescence of the directors.   p. 392.

10. CORPORATIONS. — *Acts of Officers. — Authority. — Estoppel.* — Where the authority of the president of a corporation to borrow money for the corporation is questioned, it may be shown that his acts were ratified by the board of directors, or that the corporation is estopped from denying the validity of his acts by having received and used the money in the payment of the debts of the company.   p. 393.

11. RECEIVERS.—*Exceptions to Report.—Demurrer.*—Exceptions to the report of a receiver, directed against the allowance of a whole claim presented in two paragraphs, were insufficient on demurrer where they did not constitute a good answer to both paragraphs.   p. 393.

12. PLEADING.—*Demurrer.—Memorandum.—Contents.*—The memorandum required to accompany a demurrer for want of facts under §344 Burns 1914, Acts 1911 p. 415, should show wherein the pleading demurred to is insufficient for want of facts, but the statement of affirmative matter therein to meet and avoid facts alleged is unauthorized.   p. 393.

From Franklin Circuit Court; *N. S. Givan*, Special Judge.

Proceedings in the matter of the receivership of the Brookville Carriage Company, in which Abe Bossert filed

exceptions to the partial report of George A. Geis, Receiver. From a judgment against him on demurrer to the exceptions, the exceptor appeals. *Affirmed.*

*Walter F. Bossert, Allen Wiles* and *Raymond S. Springer,* for appellant.
*I. N. McCarty* and *James B. Kidney,* for appellee.

Felt, J.—Appellee as receiver of the Brookville Carriage Company filed his partial report as such receiver, which report shows that he is chargeable with certain itemized claims amounting to $4,442.23; that he has paid out certain items amounting to $1,220.80, leaving a balance for distribution of $3,221.43; that the above expenditures are all preferred claims for costs and expenses of receivership, labor and payment of mortgage lien upon the real estate sold; that he has in his possession for collection, book accounts in the sum of $85.45 and notes in the sum of $701 due said carriage company, on which he may be able to realize something; that he has examined and recommends the allowance of preferred claims, amounting to $113.65, which are shown in detail; also unpreferred claims amounting to $6,426.81. The report also shows that the Franklin County National Bank holds unpaid notes, heretofore sold and endorsed by the carriage company, and not due, in the sum of $280; that the bank would be entitled to share in distribution for any loss sustained thereon; that the receiver had arranged with the bank to hold out sufficient funds until it might know what its loss was and file claim therefor; that he deems it advisable to retain in his hands the sum of $215.71 for aforesaid accounts and other matters, and after paying the preferred creditors $113.65, he asks to make distribution of the balance of the funds to the unpreferred creditors, in the sum of $2,892.07, amounting to forty-five per cent of such claims; that his acts as such receiver be approved.

Among the unpreferred claims was one for $1,022.37 in

favor of the Franklin County National Bank, and the following:

"Claim No. 24. State of Indiana, Franklin County, ss: The Brookville Carriage Company, To John P. Schiltz, heirs, Dr. Jany. 29, 1914. To amount due and owing to John P. Schiltz, by said Brookville Carriage Company, at date of his death, February 12, 1913, as shown by the books of said Company, as the same has been audited and corrected by Mr. I. N. McCarty, $2,547.06 * * * that the above amount is correct and true, and that the amount, to wit; $2,547.06 is justly due and owing to said Schiltz heirs," etc.

"Claim No. 25. The Brookville Carriage Company Dr. to John A. Fries Estate. First paragraph; Sept. 9, 1902, to Oct. 1906, To cash loaned the said Brookville Carriage Company for payment of bills, together with interest on same, $1,286.45. Second paragraph; Sept. 9, 1902, to March 25, 1913, To cash loaned said Brookville Carriage Company as above set out, evidenced by a promissory note dated Jan. 2, 1911, a copy of which note is set out below. $1,286.45.

Brookville, Ind. January 2, 1911, No. —— Due —— One year after date we promise to pay to the order of John A. Fries, $1100.00, (Eleven hundred dollars) value received without any relief whatever from valuation or appraisement laws with interest at the rate of six per cent. per annum until due and — per cent. per annum after maturity until paid and attorney's fees. The drawers and endorsers severally waive presentment for payment, protest and notice of protest and non-payment of this note. Payable at Franklin County National Bank at Brookville, Indiana.

Brookville Carriage Co. per J. P. Schiltz, Pres."

On April 27, 1914, Abe Bossert, appellant, filed exceptions to said report, setting forth in substance, the following: That he was an endorser on certain notes of the Brookville Carriage Company, held by the Franklin County National Bank, which bank was entitled to share in the distribution of the funds in the hands of the receiver available for payment of the claims due the general creditors of said carriage company; that the claim of said bank

amounts to $1,022.37 and the report of the receiver recommends the payment of forty-five per cent of the claim; that no distribution should be made by the receiver until all rights of all classes of creditors have been determined; that claim No. 24 in favor of the heirs at law of John P. Schiltz, deceased, is not itemized nor is it shown how the indebtedness was contracted; that Schiltz was for a long time immediately prior to his death president of the Brookville Carriage Company and was such officer at the time the money was loaned to the company; that there was never any action of, or resolution passed by, the board of directors of the Brookville Carriage Company relative to said amount; that the claim was made by Schiltz as such president in his trust capacity for said corporation with himself as an individual; that claim No. 25 in favor of the administrator of the estate of John A. Fries, deceased, against said carriage company, is for cash loaned to the company for the payment of its bills, and is evidenced by the promissory note of the company executed by J. P. Schiltz as president; that said Fries was at the time the money was loaned and note executed, an officer and director of the carriage company; that said note was executed without the knowledge or approval of the board of directors of the carriage company, and while Fries was holding a fiduciary and trust relation toward the Brookville Carriage Company.

To the foregoing exceptions the receiver demurred as follows: ''George A. Geis, receiver of the Brookville Carriage Company demurs to the exceptions filed in said cause relating to a partial report of said receiver for the reason that said exceptions do not state sufficient facts to constitute valid objections to said report in this to wit, that the claims allowed and excepted to were for money had and received by said Brookville Carriage Company from such claimants and used in paying labor and other debts of said carriage company and that the directors of said carriage company well knew at the time that said moneys were being so ad-

vanced and paid out for their debts as such company and accepted the benefits derived therefrom and acquiesced in such advancements and that for said reasons it is immaterial whether the board of directors authorized the same or not.'' This demurrer was sustained and appellant excepted to such ruling.

Appellant has assigned as error that the court erred in sustaining the demurrer of George A. Geis, receiver of the Brookville Carriage Company, appellee, to the exceptions filed by Abe Bossert, appellant, to the receiver's partial report in said cause. Other errors are attempted to be assigned for the sustaining of the demurrer to each separate specification of said exceptions, but inasmuch as the record shows no demurrer presented to such separate specifications, and no exceptions saved, other than the one relating to the ruling on the demurrer to the exceptions as a whole, no question is presented by any of the specifications of error except the first.

1.

The case was appealed to the Supreme Court and is by that court transferred to this court for want of jurisdiction.

An appeal may be taken from an order for the payment of money. Subd. 15, §1392 Burns 1914, Acts 1907 p. 237; *Barney* v. *Elkhart County Trust Co.* (1906), 167 Ind. 505, 79 N. E. 492; *Natcher* v. *Natcher* (1899), 153 Ind. 368, 55 N. E. 86; *Pounds* v. *Chatham* (1884), 96 Ind. 342, 346; *Chicago Horseshoe Co.* v. *Gostlin* (1903), 30 Ind. App. 504, 508, 66 N. E. 514; *Cook* v. *Citizens Nat. Bank* (1881), 73 Ind. 256, 261.

2.

Where exceptions have been filed to the report of a receiver, the report stands as the complaint and the exceptions as the answer thereto. The practice of testing the sufficiency of such exceptions, as an answer, or as showing valid objections to the correctness of such report by demurrer has been recognized by this court and by our Supreme Court. *Johnson* v. *Central Trust Co.* (1903), 159 Ind. 605, 607, 608, 65 N. E. 1028; *Spray* v.

3.

*Bertram* (1905), 165 Ind. 13, 15, 74 N. E. 502; *Wysong* v. *Nealis* (1895), 13 Ind. App. 165, 169, 41 N. E. 388; *Brownlee* v. *Hare* (1878), 64 Ind. 311, 313, 316; *Taylor* v. *Burk* (1883), 91 Ind. 252, 255. If the exceptions filed to the receiver's report show a valid reason why any item included in the report and on which a payment of forty-five per cent was ordered to be made, should not be so allowed and paid, then, under the practice obtaining in such proceedings, it was error to sustain the demurrer thereto. *Shuey* v. *Lambert* (1913), 53 Ind. App. 567, 102 N. E. 150; *Wysong* v. *Nealis, supra; Hamlyn* v. *Nesbit* (1871), 37 Ind. 284, 289.

No objection is urged to the form of the claims, or the payees named in claims Nos. 24 and 25, above set out, and the questions presented are, therefore, limited to the sufficiency of the exceptions to said claims. Claim No. 24, is for a balance due John P. Schiltz on a book account with the Brookville Carriage Company. The exceptions to this claim show that the account was for money loaned the company; that John P. Schiltz was at the time president of the company; that there was never any action of the board of directors relating to the loan of the money; and Schiltz, as president, procured the loan for the company from himself as an individual. The exceptions in effect admit that the company procured the money from its president and retains it, but asserts nonliability on the ground that the board of directors took no action in any way relating to the transaction. As already stated, the exceptions to be good must present a complete defense to some item or claim of the receiver's report. To show that the president, acting for the company, procured money for it from himself as an individual without any action of the board of directors relating thereto, falls short of showing the nonliability of the company for money so received and retained.

A corporation may borrow money from its officers or di-

rectors and when such persons have so provided the company with means to carry on its business or pay its debts they may enforce collection the same as any other creditor. When, however, the act of a person who has dealt with a corporation of which he is an officer or director, is assailed, his conduct will be closely scrutinized to ascertain that any indebtedness he claims to be due him from such company is a *bona fide* claim against the company and that he has not abused the power of his position to obtain an unfair advantage over other creditors. *Levering* v. *Bimerly* (1897), 146 Ind. 545, 554, 45 N. E. 775; *Duncomb* v. *New York, etc., R. Co.* (1881), 84 N. Y. 190, 199; *Twin-Lick Oil Co.* v. *Marbury* (1875), 91 U. S. 587, 589, 23 L. Ed. 328; 2 Thompson, Corporations §§1247, 1248, 1255, 1487. The contracts of an officer of a corporation with such company not duly authorized are generally held to be voidable at the option of such company and relief therefrom may be obtained in a timely and proper action by the corporation or a stockholder, and perhaps in some situations by other persons having rights or interests adversely affected thereby. But it has been held that this rule was adopted to secure justice and not to work injustice; that where the contract is free from actual fraud, it can not be avoided without restoring to such person the money paid or value received by the corporation. 2 Thompson, Corporations §§1255-1257, 1260; *Griffith* v. *Blackwater Boom, etc., Co.* (1899), 46 W. Va. 56, 33 S. E. 125, 128. In speaking of this rule the New York court of appeals in *Duncomb* v. *New York, etc., R. Co., supra,* at page 199, said: "But the rule was adopted to secure justice, not to work injustice; to prevent a wrong, not to substitute one wrong for another; and hence have arisen limitations upon its operation, calculated to guard it against evil results as inequitable as those it was designed to prevent. Thus, the beneficiary may avoid the act of the trustee, but can not do so without restoring what it has received. (*York Co.* v. *Mc*

*Kenzie,* 8 B. Par. Cas. 42.) To cling to the fruits of the trustee's dealing while seeking to avoid his act; to take the benefit of his loan, and yet avoid and reverse its security, would be grossly inequitable and unjust. It would turn a rule designed as a protection, into a weapon of offense and injustice." The language quoted was used in the decision of a case where the president of a railroad company was a preferred creditor, but the transaction was *bona fide* and he was secured for a loan by a pledge of bonds.

There is no claim of fraud or unfair dealing, nor is it denied that the company received and retained the money. Where such is the case it is not a good defense merely to show that the president of the company furnished the money to the company and that the board of directors took no action relating thereto. While the principle of voidable contracts is generally invoked on behalf of the corporation, or a stockholder, we think it may be invoked by a creditor, but not without showing that the transaction complained of had lessened the ability of the corporation to pay his claim. In this case there is no claim that the money borrowed was not honestly applied in payment of the obligations of the corporation.

In deciding this question we are not losing sight of the fact that, as a general rule, the president of a corporation has no power to bind the company by incurring indebtedness, or by his signature to commercial paper, unless the authority to do so is expressly conferred by the articles of incorporation or by-laws, or by an order of the board of directors. *Elkhart Hydraulic Co.* v. *Turner* (1908), 170 Ind. 455, 459, 84 N. E. 812; *Louisville, etc., R. Co.* v. *McVay* (1884), 98 Ind. 391, 393, 49 Am. Rep. 770; *National State Bank* v. *Vigo County Nat. Bank* (1895), 141 Ind. 352, 355, 40 N. E. 799, 50 Am. St. 330; 2 Thompson, Corporations §§1454, 1455, 1458, 1460, 1465, 1468, 1473, 1478, 1485. But it is also true that the authority of a president or other officer of a corporation may be conferred oth-

er than by express action of the board of directors. It may be shown that the president for a long time prior to the transaction in question acted as the chief executive officer of the company; that he executed the notes and other contracts of the company and had general charge of its business with the full knowledge and acquiescence of the directors; that he had habitually been permitted to borrow money, or that he had furnished it, for the company. Likewise, if warranted by the issues it may be shown that his acts had been ratified by the board of directors, or that the company was estopped to question the validity of his acts by having received and used the money in the payment of the debts of the company. *National State Bank* v. *Sanford Fork, etc., Co.* (1901), 157 Ind. 10, 15, 60 N. E. 699; *Elkhart Hydraulic Co.* v. *Turner, supra; National State Bank* v. *Vigo County Nat. Bank, supra;* 2 Thompson, Corporations §§1257, 1515.

Claim No. 25, is presented in two paragraphs. What we have said about the exceptions to claim No. 24 is equally applicable, at least, to the first paragraph which is based on an account for money loaned to pay the debts of the company. The second paragraph is based on a note given in payment of the money loaned, but as the exceptions are directed to the whole claim, if they are insufficient as to the first paragraph, it is immaterial whether they constitute a good answer to the second paragraph.

The demurrer in this case is peculiar and for that reason should receive some consideration. Appellee in the memorandum accompanying it states that the money obtained was used in paying the debts of the company; that the directors knew the fact, accepted the benefits therefrom and acquiesced in the action of said officers in so obtaining and using the money for the benefit of the company. We know of no authority which authorizes a demurrer to supply facts, which to be available should be set

up in other and appropriate pleadings. By an act of 1911 (Acts 1911 p. 415, §344 Burns 1914), the memorandum accompanying a demurrer on the ground of insufficient facts, is required to state "wherein such pleading is insufficient for want of facts," but it affords no authority for making the demurrer perform the office of a reply by setting up affirmative matter to meet and avoid an answer, which seems to have been attempted in this instance. If a reply is contemplated at all in such cases as this, which we do not hold, a demurrer could not be made to serve the purpose of such pleading.

The exceptions do not present any valid objection to the report of the receiver and the court therefore did not err in sustaining the demurrer thereto. Judgment affirmed.

NOTE.—Reported in 107 N. E. 95. As to the contracts of an officer with his corporation, see 139 Am. St. 598. As to the liability of a corporation on negotiable paper executed by officer or agent, see 21 L. R. A. (N. S.) 1046; 26 L. Ed. U. S. 1039, 1078. See, also, under (1) 2 Cyc. 989; (2) 2 Cyc. 600; (4, 5) 34 Cyc. 457; (6) 10 Cyc. 807, 1101; (7) 10 Cyc. 809; (8) 10 Cyc. 817; (9) 10 Cyc. 907, 1105, 1118; (10) 10 Cyc. 912, 913; (11) 34 Cyc. 457: (12) 31 Cyc. 316.