LEO ABRAHAMSON *v.* SAUL S. LEVIN, LILLIAN LEVIN, JACK ABRAHAMSON, ABRAHAMSON MOTOR SALES, INC., MERCANTILE NATIONAL BANK OF INDIANA, WHITE INSURANCE AGENCY, INC.

[No. 3-773A81. Filed December 4, 1974. Rehearing denied January 20, 1975. Transfer denied October 28, 1975.]

*Rudolph Tanasijevich,* of Hammond, for appellant.

*Samuel J. Goodman,* of East Chicago, for appellee Abrahamson Motor Sales, Inc.; *Charles Levin,* of Hammond, for appellees Saul S. Levin, Lillian Levin and Jack Abrahamson; *Edmund J. Leeney,* of Hammond, for appellee Mercantile National Bank of Indiana; *Ralph S. Thorsen,* of Hammond, for intervener White Insurance Agency, Inc.

HOFFMAN, C.J.—Leo Abrahamson (Leo) appeals from the entry of a summary judgment against him upon his cross-complaint in an interpleader action. The sole issue presented by this appeal is whether the trial court properly found that no material issue of fact existed in granting such summary judgment.

The record of this cause discloses that Leo, his brother Jack Abrahamson (Jack), their sister Lillian A. Levin (Lillian), and her husband Dr. Saul S. Levin (Saul), were stockholders, directors and officers of Abrahamson Motor Sales, Inc. (the corporation). Jack was president of the corporation, Saul was executive vice president, Leo was vice president, and Lillian was Secretary-Treasurer. It further appears that the affairs of this corporation were loosely and informally managed by these individuals. Loans were made to the corporation and repaid by the corporation, and on one occasion a salary was fixed, all without formal action by its board of directors.

Leo, Lillian and Saul each had loans outstanding to the corporation at various times from 1955 through 1968. The record discloses that these loans were evidenced by promissory notes, payable on demand, executed in the corporation's behalf by its officers.

In September of 1968, Lillian or Saul drew a check in the amount of $22,284.69 on the corporation's account with the Mercantile National Bank of Indiana (Bank). Lillian testified that this check was payable to her and constituted repayment of the balance of loans then outstanding made by Saul and Lillian to the corporation. The apparent reasons for the timing of this repayment were that the corporation was undercapitalized, had been chronically short of cash, and was experiencing financial difficulties at the time. The Bank refused to allow Saul and Lillian to withdraw these funds until loans by the Bank to the corporation were repaid, pursuant to a subordination agreement executed by all officers of the corporation in its favor.

Although the Bank would not allow these funds to be withdrawn, it did agree to debit the corporation account and place the money in an escrow savings account, to be paid to Saul and Lillian when the corporation's indebtedness to the Bank was satisfied. Sometime later, such corporate debt became satisfied and Saul and Lillian attempted to collect the funds in escrow from the Bank. At this time Leo interceded and advised the Bank that there were other outstanding claims to the money.

Because it feared that payment to the Levins might expose it to double liability, the Bank then brought the interpleader action which is the basis of the instant appeal. It paid the disputed funds into the trial court, and named Jack, Leo, Lillian, Saul and the corporation as defendants. Thereafter, the bank was discharged by the trial court.

Jack, Leo and the corporation jointly filed an answer to the Bank's complaint claiming the funds, as did Saul and Lillian. The former group of defendants denied that the latter

was entitled to the money, and each group filed a cross-complaint against the other asserting a claim thereto. The Levins moved for summary judgment prior to filing their cross-complaint, which was directed solely to Leo, inasmuch as Jack and the corporation had withdrawn from the litigation prior to the summary judgment motion.

Also, during the proceedings in the trial court prior to the motion for summary judgment, a creditor of the corporation sought and was granted permission to intervene to assert a claim to the funds here at issue. This creditor and Leo both filed affidavits in opposition to the motion for summary judgment. Thereafter, the motion for summary judgment was granted by the trial court, and the funds were ordered paid to the Levins.

In enumerating its reasons for granting summary judgment, the trial court recounted many of the facts stated hereinabove, and then further found:

"9. On December 6, 1971, Leo Abrahamson filed a cross-complaint alleging that Abrahamson Motor Sales, Inc., is indebted to him in the sum of Twenty-two Thousand, Five Hundred Thirty-seven Dollars and Fifty-one Cents ($22,-537.51) and in the sum of Three Thousand, Four Hundred Seventy-two Dollars and Eighty-eight Cents ($3,472.88) for loans made to that corporation on April 1, 1953, January 2, 1957, and January 1, 1964. *The cross-complaint is against Abrahamson Motor Sales, Inc., and not against the fund on deposit herein.*

"10. On February 22, 1972, Samuel J. Goodman appeared on behalf of the defendant, Abrahamson Motor Sales, Inc., and filed a disclaimer disclaiming any interest in the money on deposit.

"The Court further finds that there are now [no] genuine issues as to any of the material facts and as a matter of law, the moving parties, defendants Saul S. Levin and Lillian A. Levin, are entitled to judgment as a matter of law. [sic]." (Emphasis supplied.)

The cross-complaint in which Leo joined asserted the existence of a debt owed him by the corporation, and that he

had paid debts of the corporation and was entitled to reimbursement. Additionally, it alleged:

"5. That there are other claims by creditors of Abrahamson Motor Sales, Inc.

"6. That Cross-Defendants, Saul S. Levin and Lillian Levin have attempted to pay themselves Twenty Two Thousand Two Hundred Eighty Four and 69/100 ($22,284.69) Dollars from Abrahamson Motor Sales, Inc. funds without the authority of said corporation, its Board of Directors and without the knowledge and consent of said Corporation's Board of Directors or its officers.

"7. That said Cross-Defendants, Saul S. Levin and Lillian Levin are attempting to become preferred creditors without right to the detriment of Cross-Complainant and others.

"8. That the funds on deposit herein should be applied to payment of claims by outside creditors and the balance, if any, should be paid pro-rata to the Cross-Complainant, Cross-Defendants and other shareholders claiming indebtedness due from Abrahamson Motor Sales, Inc.

"*WHEREFORE, Cross-Complainants pray that the creditors of Abrahamson Motor Sales, Inc. be paid from the funds on deposit in the Clerk's Office herein,* and the balance be distributed pro-rata among Cross-complainant and Cross-Defendants who have made loans to Abrahamson Motor Sales, Inc., which are due and still unpaid; and for all other just and proper relief." (Emphasis supplied.)

Appellant is not attempting to execute upon alleged corporate assets to satisfy a judgment lien against the corporation. And, it is apparent that appellant's cross-complaint does not state a derivative cause of action seeking to recover the funds paid into the trial court for the benefit of the corporation by reason of his status as a shareholder. Furthermore, such cross-complaint does not seek the appointment of a receiver to preserve or liquidate the assets of the corporation for the benefit of its creditors. Rather, it avers only the detriment suffered by appellant as a creditor of the corporation as a basis for requesting the trial court to set aside the preference inuring to the Levins as fully reimbursed creditors of the corporation.

·The courts of this State have traditionally rejected the "trust fund" theory of corporate preferences and have uniformly held that the directors of a corporation do not hold corporate property in trust for the corporate creditors. *Nappanee Canning Co.* v. *Reid, Murdoch & Co.* (1902), 159 Ind. 614, 64 N.E. 870; *Fricke* v. *Angemeier* (1912), 53 Ind. App. 140, 101 N.E. 329. The following language from *Nappanee* disposes of many of appellant's contentions in the case at bar:

> "*Until its property passes into the custody of the law by seizure under proceedings in attachment, or by the appointment of an assignee, trustee, or receiver, the corporation may sell, transfer, pledge, or mortgage its property in the same manner and subject to the same restrictions only as apply to the case of a private person.* Such property is in no respect held in trust for the creditors of the association. The law of this State gives them no lien or claim upon such property. They have no right to look to the corporation or its directors to protect their interests. They deal with it at arm's length, and their attitude is antagonistic to the association. When asked to extend credit to it, all persons dealing with the corporation know that if it is, or thereafter becomes, insolvent, the whole of its property may be applied to pay or secure debts due to favored creditors, including officers and directors, and that the claims of all other creditors may be excluded and consequently lost. If, with this knowledge, credit is given, it can not be said that preferences subsequently conferred upon other creditors have violated any right which the law gave to the creditor whose claim was left unpaid and unsecured.
>
> "*No statute gives to a creditor the right to demand an equal distribution of the assets of an insolvent private manufacturing corporation among its creditors.* The maxim that, in case of insolvency, equality is equity has not the force of a statute requiring such a distribution. It is applicable only when the principles of equity are brought to bear upon the distribution of property lawfully in the custody of a court, where such court possesses the authority to make distribution upon that basis. The directors of a manufacturing corporation are not the agents or trustees of the creditors, but are simply and solely the representatives of the stockholders and of the corporation. There is no sufficient legal reason why they should be denied the right of preference in the event that the corporation becomes insolvent. And even if the vote of the director him-

self is necessary to authorize the execution of the instrument creating the preference, no legal wrong is done to the other creditors where such preference is given. The association is a legal entity distinct from the stockholders and from the directors. The action of the directors is their action, and not their individual act. The vote of a majority is required to pass any resolution or order, but the action of such majority is not necessarily vitiated by the fact that one or more of the persons composing it is interested in the passage of the resolution. The duty of the directors is to the corporation and its stockholders, not to the creditors. *If the corporation or its stockholders acquiesce in the disposition of the corporate assets made by the directors, and if such disposition is the payment of a just debt owing by the corporation, no matter to whom, it is difficult to perceive upon what legal ground a creditor can call such act in question.* When it is understood that no trust exists in favor of creditors, that the directors are the agents of the stockholders and of the corporation only, and that they owe no special duty to the creditors of the company, it seems plain that, where the right to give preferences is recognized, the directors of an insolvent corporation may secure a *bona fide* debt owing to one of their own number.

"As we have stated, it is established law in this State that an insolvent corporation may give preferences to the same extent and in like manner as an individual. In such transactions the corporation and its stockholders are the principal, the directors are their agents. If the vote of the director whose debt is secured is necessary to pass the resolution creating the preference, the only persons sustaining such relations to him as authorize them to object to his act are the stockholders and the corporation itself." (Emphasis supplied.) (At 621-623 of 159 Ind., at 872-873 of 64 N.E.)

In the case at bar the majority of the directors and the corporation have chosen to acquiesce in the disposition of corporate assets questioned by appellant. Furthermore, because it is not alleged that a court of equity had acquired jurisdiction over the assets of the corporation for the benefit of its creditors at the time the preference was effectuated, the exception stated in *Nappanee* to the power of a corporation to prefer creditors in such circumstances is not applicable herein.

The sole remaining general limitation on the power of a corporation to prefer its creditors which is arguably applicable to the instant case is stated in IC 1971, 32-12-1-1 (Burns Code Ed.). Title 32, Art. 12 deals primarily with assignments for the benefit of creditors, but the following language is found in IC 1971, 32-12-1-1, *supra:*

> "Nothing in this act shall prevent any debtor from preferring a particular creditor or creditors by an assignment not made under this act, conveying less than all of the debtor's property or made for the benefit of less than all of his creditors, or by other means, when such action is taken in good faith, and not as a part of or in connection with a general assignment made under this act; *but no corporation shall in any case prefer any creditor where any director of the corporation is a surety on the indebtedness preferred, or has been a surety on such indebtedness within four [4] months prior to such preference."* (Emphasis supplied.)

This court has declined to extend the language quoted above which limits corporate preferences to situations involving corporate officers rather than corporate directors. *Travis, Rec.* v. *Porter* (1927), 86 Ind. App. 369, 158 N.E. 234. In light of the long standing rule in Indiana validating corporate preferences even when made to a director who is a creditor, this statutory language must be limited to suretyship situations, and not extended so as to proscribe preferences such as those at issue in the case at bar.

Appellant has directed the court's attention to the case of *Bossert* v. *Geis* (1914), 57 Ind. App. 384, 107 N.E. 95, as authority for the proposition that he was entitled to have the conduct of the Levins "closely scrutinized" by the trial court to ascertain that the indebtedness for which they were paid was actually due them, and to ensure that they have not abused the power of their position to the detriment of other creditors. It is true that *Bossert* contains language seemingly supportive of appellant's contention in this regard. However, it is apparent that the language so employed by the court in *Bossert* was intended only as an objective test to be employed to validate good-faith director-corporation transactions at a

time when such transactions were strictly disfavored by the law.

Moreover, under *Bossert* these determinations were to be made by trial courts in passing upon the defenses of corporate receivers to claims made by directors as corporate creditors. Necessarily, then, the pendency of a receivership over the assets of a corporation is a condition precedent to the application of the *Bossert* test now under consideration. However, as stated hereinabove, it is not alleged that the trial court in the case at bar ever acquired such equitable jurisdiction over the assets of the corporation. Therefore, the trial court did not commit reversible error when it failed to afford appellant such "scrutiny" of the Levins' acts.

Appellant has demonstrated no legal principles which, under his cross-complaint, would have required the trial court herein to consider the corporate informalities he has alleged in the interpleader action which gave rise to this appeal. The issue before the trial court was: Between Leo and the Levins, who had superior title to the fund? Appellant has proved no title in himself, while the Levins have shown they had received the funds here at issue from the corporation, and thus were entitled to the funds. In these circumstances appellant must prevail, if at all, upon the strength of his own title to such funds, not upon the defects, if any, in the Levins' title to such funds. *Aircraft Acceptance Corp.* v. *Jolly* (1967), 141 Ind. App. 515, 230 N.E.2d 446 (transfer denied) ; *Lane et al.* v. *Sparks* (1881), 75 Ind. 278. Therefore, the trial court correctly found that there is no genuine issue as to any of the material facts and that as a matter of law the Levins' title to the subject fund is superior to Leo's title to such fund. Accordingly, the judgment of the trial court herein must be affirmed.

Affirmed.

Garrard, J., concurs in result; Staton, J., concurs with opinion.

## CONCURRING OPINION

STATON, J.—I agree that the trial court properly granted summary judgment on the cross-claim of Interpleader-Defendants, Saul and Lillian Levin. The rationale of our affirmance should be that a general creditor has no standing to object or participate in a preferential payment by a debtor to another general creditor.

The only interest in the interpleader fund asserted by Interpleader-Defendant Leo Abrahamson arises from his standing as a general creditor of Abrahamson Motor Sales, Inc. Indiana law does not generally preclude a corporation from preferring some of its general creditors to the exclusion of others, even if the preferred creditors are also officers or directors of the debtor corporation. *Nappanee Canning Co.* v. *Reid, Murdoch & Co.* (1902), 159 Ind. 614, 64 N.E. 870; *Levering* v. *Bimel* (1897), 146 Ind. 545, 45 N.E. 775.

Leo Abrahamson's cross-claim contains the bare assertion that he is a creditor of Abrahamson Motor Sales, Inc. and is therefore entitled to a "pro rata share" of the interpleaded fund. He did not seek avoidance of the preference as a fraud on creditors, nor did he allege the existence of other special facts giving rise to any claim for equitable relief. While Mr. Abrahamson may have been entitled to some relief in his capacity as stockholder or director of the corporation, his claim to the interpleaded fund was founded solely upon his standing as a general creditor of Abrahamson Motor Sales, Inc. Since he failed to assert any cognizable legal or equitable claim for relief in his capacity of general creditor, the trial court's grant of summary judgment against his cross-claim must be affirmed.

NOTE.—Reported at 319 N.E.2d 351.