## THOMSON-HOUSTON ELECTRIC LIGHT COMPANY v. HENDERSON ELECTRIC LIGHT COMPANY.

*Corporation—Creditor and Debtor—Trust Fund—Equitable Relief—Counter-Claim—Exceptions Filed after Adjournment of Court.*

1. As between itself and its creditors a corporation is simply a debtor and the relation of trustee and *cestui que trust* does not exist so as to create a lien upon the assets of the corporation in favor of the creditor in any other sense than applies to an individual debtor; therefore,

2. A creditor has no equitable title to assets of a corporation, whether solvent or insolvent, in the hands of its treasurer, and the courts will not interfere with their equitable jurisdiction to enforce the payment of a judgment in favor of the creditor against the corporation.

3. A counter-claim embracing a transaction not connected with the subject of the action and with which the plaintiffs had no connection, but which was for an alleged tort against parties other than the plaintiff, was properly disallowed.

4. Exceptions to the findings of fact by the trial Judge, filed after the adjournment of the court for the term, will not be entertained.

CIVIL ACTION, heard at May Term, 1894, of VANCE Superior Court, before *Battle, J.*, on the report of referees. The action was instituted to recover of the defendant corporation the sum of $2,006.30, and interest, for goods sold and delivered, and the directors and stockholders of the defendant corporation were made parties to obtain injunctive relief against the threatened conversion of the assets, and to enable plaintiff to follow the fund if converted.

The material parts of the complaint were as follows:

4. The plaintiff alleges that all the property and franchise of the defendant company were sold on January 6, in the year 1891, at the court-house door in Henderson, under

an execution issued upon a judgment in favor of William H. S. Burgwyn, its president, and were bid off to a new company, of which said Burgwyn is a member, for the sum of $3,999.99, which amount was duly paid, as appears from the return of the sheriff upon his said execution, and the surplus arising from said sale after paying the plaintiff's claim and the costs of the action and sale, was $2,968.11, which sum the sheriff claims to have paid over to the said Burgwyn as treasurer of the Henderson Electric and Gas Light Company.

5. Plaintiff alleges that a certain controversy is now existing between the defendants Burgwyn, Taylor, Zollicoffer, Young and Daingerfield on the one hand, and the Commercial Bank of Danville, Va., and Messrs. Ruffin & Hairston and C. A. Ballou of the other part, about and concerning the right of said bank and said Danville people to collect certain notes of said Burgwyn, Zollicoffer, Daingerfield, Young and Taylor executed in part for shares of stock in said Henderson Electric and Gas Light Company, which notes were executed to Ruffin & Hairston and C. A. Ballou, and by them assigned to said bank, the said makers claiming that there is fraud in the consideration of said notes, of which said bank had notice, and is bound, and actions are now pending in this Court by said bank against said parties for the collection of said notes.

"6. And plaintiff alleges that the said Burgwyn and others, makers of said notes, claim the right to apply the surplus received as aforesaid, from the sale of said plant as aforesaid, to the payment of any damages they may recover or have recovered against said Ruffin & Hairston and C. A. Ballou by reason of the alleged fraud aforesaid in the consideration of said notes, and they are threatening to so apply said surplus, to plaintiff's great hurt and damage, if the same shall be done.

116—8

" 7. There are no other debts of said defendant corporation of any considerable amount, as plaintiff is informed and believes, certainly not more than $2,968.11 will pay, and plaintiff has demanded that his said debt shall be paid out of said surplus of $2,968.11, but the said defendants refuse to pay the same thereout, for the reason that they claim the right to apply the same as aforesaid, and the further alleged reason that the said plaintiff company sold said goods to Ruffin & Hairston and C. A. Ballou, and not to said defendant company, which last claim is without foundation in fact, as the defendants have admitted.

" 8. If the said defendant Burgwyn or other officer or agent of said defendant company shall be allowed to apply and use said $2,968.11, as they have threatened to do, there will remain no assets of said company applicable or that can be reached to pay plaintiff's said claim.   Wherefore, plaintiff demands judgment against the defendants—

" 1.  For $2,186.86, with interest on $2,006.30, principal money, from the first day of June, 1891, till paid.

" 2.  That the said W. H. S. Burgwyn, treasurer, and the other defendants, be, by the order and decree of this Court, required and commanded to pay the same to the plaintiff, together with the costs of this action, out of the $2,968.11 so paid over to him by the sheriff as aforesaid.

" 3.  That in the meantime, before judgment, the defendant company and its officers and agents be restrained and enjoined from paying out or otherwise disposing of said $2,968.11, or any part thereof, unless first they shall pay plaintiff's debt and interest.

" 4.  If it shall appear that any of said defendants have applied any of said $2,968.11 to any of the uses herein mentioned, or to any claim of theirs against said defendant company, or any of its stockholders, or have distributed the same or any part thereof to its stockholders, then to that

amount the plaintiff asks judgment against said parties so applying or securing the same for such amounts as have been so applied.

" 5. For such other and further relief as the circumstances of the case may require and to the Court shall seem just."

The answer denied the indebtedness and admitted the allegations contained in the 4th paragraph of the complaint. The subsequent sections of the answer were as follows:

" 5. That they admit the allegations in section 5 of plaintiff's complaint, but they say the allegations are immaterial in this action, and if material, the pleadings in the causes referred to will show the contentions of plaintiff and defendants, as well as who are the parties in said causes.

" 6. That the allegations in section 6 of plaintiff's complaint are not true as therein stated, and are denied.

" 7. That as to the allegations in section 7 of plaintiff's complaint, they say:

" It is true there are no debts against the defendant company of any considerable amount, and they deny the alleged indebtedness to plaintiff. They admit that there was a surplus at the said sale, as alleged. They admit that plaintiff has demanded of the defendants payment of their alleged debt, and that they declined to pay the same because they did not owe it. They admit, also, that they have stated that the plaintiff did not sell the alleged goods and property to the defendant company, but to Ruffin & Hairston and C. A. Ballou, if to any one. They deny all other allegations in said section, and especially do they deny that they ever admitted that there was no foundation in fact as to their claim that the goods were not sold to them, but to Ruffin & Hairston and C. A. Ballou. Wherefore, the defendants pray judgment that they go hence without day, and recover their costs."

At May Term, 1892, the cause was referred to Harris and

Bridges, and at the hearing before them they denied the motion of defendants to file an amended answer. At February Term, 1894, *Judge Bynum* allowed the amended answer to be filed, which was as follows:

" The defendants further answering plaintiff's complaint, leave being first had and obtained, and as counter-claim to the same, allege and complain:

"*First.* That plaintiff conspired with Messrs. Ruffin & Hairston and C. A. Ballou to deceive defendant by false representations as to the cost of the electric light and electrical supplies sold defendant by the said Ruffin, Hairston and C. A. Ballou; and by said false representations defendant was deceived and was induced to pay and did pay to the said Ruffin & Hairston and C. A. Ballou $2,000 more for said electric light plant and electrical supplies than defendant agreed to pay and otherwise would have paid, or than they were in law obliged to pay.

"*Second.* That defendant is advised and believes, and so charges, that the said firm of Ruffin & Hairston and C. A. Ballou are insolvent.

"*Third.* That plaintiff conspired with Messrs. Ruffin & Hairston and C. A. Ballou to deceive defendant by false representations as to the cost of the electrical supplies bought by defendant of said Ruffin & Hairston and C. A. Ballou, as well as to the cost of the said supplies bought by defendant of plaintiff, which supplies are charged against defendant in plaintiff's complaint and bill of particulars, and that defendant was deceived by said false representations, and was induced thereby to pay and did pay said Ruffin & Hairston and C. A. Ballou and plaintiff more than the fair, reasonable and market value of said supplies, and more than defendant otherwise would have paid, or than they agreed to pay, and more money than they were in law obliged to pay, to-wit, the amount of $500.

"And defendant claims as damages against plaintiff the sum of $2,500.

"Wherefore, the defendant prays judgment against plaintiff for the sum of $2,500."

The plaintiffs in reply denied the allegations of the amended answer and for a further reply said:

"1. That as to the alleged or pretended cause of action, counter-claim set forth in the first section of the said amended answer, the same nor any part thereof did not rise out of the contract or transaction set forth in the complaint, or the foundation of the plaintiff's claim, nor is it connected with the subject of the action, and the plaintiff insists that it is therefore in no sense the proper subject of a counter-claim, and ought not to be allowed to be pleaded or asserted as such in this action."

For a further reply to counter-claim set forth in the amended answer of the defendants, the plaintiff says:

"1. That said alleged cause of action arising out of said alleged counter-claim, if any such the said defendant had or has, which the plaintiff denies, arose more than three years before the filing of said amended answer or setting up said counter-claim, and the facts constituting the said alleged fraud and conspiracy were discovered by the defendant and its officers more than three years before the filing of said amended answer and setting up of said counter-claims, and the same are barred by the three years' statute of limitation in such cases made and provided, and the plaintiff pleads and relies upon said three years statute of limitation as a bar to the said counter-claims set forth in both the first and the third sections of said amended answer."

The cause was re-referred to the referees who reported to May Term, 1894, and exceptions were filed by both plaintiff and defendants. *Battle, J.,* rendered the following judgment:

ELECTRIC LIGHT COMPANY *v.* ELECTRIC LIGHT COMPANY.

" The above entitled cause coming on to be heard and being heard at the May Term, 1894, of the Superior Court of Vance County, before His Honor *Jacob Battle, Judge presiding,* upon the report of the referees, J. H. Bridgers and A. J. Harris, Esquires, filed herein on April 28, 1894, as modified and altered by His Honor, the Judge presiding, after hearing and allowing certain exceptions filed thereto, and disallowing certain other exceptions filed thereto, the Court—upon motion of Pittman & Shaw and T. T. Hicks, plaintiff's attorneys—proceeding to judgment upon said report as amended and modified by the Court, doth consider, adjudge and decree that the plaintiff, the Thomson-Houston Electric Company, do recover of the Henderson Electric and Gas Light Company the sum of $2,241.85, with interest on $1,737.05, principal money, from the first day of June, 1894, till paid. It is further adjudged that the plaintiff do recover of the said defendant company the costs of this action, to be taxed by the Clerk of this Court. And it further appearing to the Court, from the findings of fact in the said report of the said referees, that the tangible property of the defendant company was sold under execution of January 6, 1891, and the sum of $2,944.67 from the proceeds of the sale of said property were then paid into the hands of the defendant W. H. S. Burgwyn, as treasurer of the defendant company, who now holds the same, and that the same is subject to the satisfaction of the plaintiff's recovery and costs, and that there are no other debts of said defendant corporation except this judgment, it is by the Court, on motion aforesaid, further considered and decreed that the said W. H. S. Burgwyn, treasurer, be and he is hereby ordered and directed to satisfy the plaintiff's said recovery and costs by paying the same out of the said assets. "

The defendants appealed.

In the statement of the case on appeal, certain exceptions were made for the first time by the defendants.

*Messrs. T. T. Hicks* and *T. M. Pittman,* for plaintiff.
*Mr. J. W. Hinsdale,* for defendants (appellants).

MONTGOMERY, J.: The theory upon which the plaintiffs, in their complaint, seek equitable relief, rests upon the idea that the directors of the defendant corporation are trustees in the most comprehensive sense for them, that the assets of the corporation are a trust fund in the hands of the directors for their benefit, and that therefore in this action they can have an order against the defendant Burgwyn for a payment into court of funds in his hands, as treasurer, to be applied to such judgment as the plaintiffs may recover against the defendant corporation. The argument of Mr. Hicks for the plaintiffs was able and ingenious, but it failed to satisfy us of the correctness of the plaintiff's position. The relation between a creditor and a corporation, solvent or insolvent, is simply that of creditor and debtor, and where the law-writers and the courts have used the words "trust fund" in connection with the assets of an insolvent corporation, it has not been intended to mean that there is a direct and express trust attached to the property. The assets are not in any true and complete sense, trusts. 1 Pomeroy Eq. Jur., Sec. 1046. In *Hill* v. *Lumber Co.,* 113 N. C., 173, this Court decided that a director of the insolvent defendant corporation, who was also a creditor, could not take advantage of the information which he had of the affairs of the corporation to protect himself by a judgment confessed by the corporation in his favor to the injury of other creditors, who did not have the same means of information; and that the assets of the corporation were a trust fund, and that general creditors were entitled to

come in on equal terms with directors who were *bona fide* creditors. It is true, too, that in that case the Court used' the word "lien" in reference to the claims of creditors upon the assets of the company but the word was afterwards explained in *Bank* v. *Cotton Mills*, 115 N. C., 507, to mean simply a right of priority of payment over stockholders of the corporation. It did not undertake to decide that these priorities were such a trust as attached to the property and placed the right thereto in the creditors. In *Hollers* v. *Brierfield*, 150 U. S., 371, these words are used : "A party may deal with a corporation in respect to its property in the same manner as with an individual owner and with no greater danger of being held to have received into his possession property burdened with a trust or lien. The officers of a corporation act in a fiduciary capacity in respect to its property in their hands, and may be called to an account for fraud or mismanagement in respect thereto. As between itself and its creditors, the corporation is simply a debtor and does not hold its property in trust or subject to a lien in their favor in any other sense than does an individual debtor. The assets of such a corporation (an insolvent bank) are a fund for the payment of its debts. If they are held by the corporation itself and so invested as to be subject to legal process, they may be levied on by such process." *Curram* v. *Arkansas*, 15 Howard, 304. So, it appears from the authorities that the plaintiffs have no equitable title to the assets of the corporation in the hands of Burgwyn, the treasurer of the defendant company. The relations of trustee and *cestuis que trust* between him and the creditors, for the purposes of this action, do not exist, and the plaintiffs cannot invoke the aid of the Court, in its equitable jurisdiction, to enforce the payment of the judgment recovered against the defendant in this action by an order of the court, on pain of attachment for contempt.

In *Daniel* v. *Owen*, 72 N. C., 340, where the relation of trustee and *cestui que trust* did not exist, the court below made an order that the judgment debtor should pay into court on a certain day the amount of the judgment. This Court held that the order was void because of the want of power to make it. In that case the Court said : "Under the old equity system the chancellor had power to order one who held the legal title in trust for another to execute a deed. So he had power to order a defendant who held a fund in trust, whether it consisted of bonds or money, to pay "the funds" into Court to the end that the fund should be put under the protection of the Court. This power the Court still has under the new system in all cases where there is the relation of trustee and *cestui que trust,* and the land or the fund is in contemplation of a court of equity the *property* of the plaintiff in an action brought to enforce the equity, and an order made for the execution of a deed on the payment of the fund into court, is a lawful order within the meaning of Battle's Revisal, Ch. 24, Sec. 1, sub-division 4." *Code,* Sec. 648, sub-division 4.

The Judge below properly overruled the second conclusion of law of the referee allowing the counter-claim of the defendants, set up in their amended answer. Upon the facts found by the referee the defendant, as a matter of law, was not entitled to it. According to the referee's finding, the counter-claim embraced a transaction not connected with the subject of the action, the plaintiff had no connection with it, nor ever had, and it was for a tort against other persons than the plaintiffs.

All of the exceptions filed by the defendants to the findings of fact by His Honor were filed too late. They were not put in until after the Court had adjourned for the term. *Battle* v. *Mayo*, 102 N. C., 413 ; *Lowe* v. *Elliott,* 107 N. C.,

718.   The judgment of the Court below is affirmed, except that part of it which adjudges "that the said W. H. S. Burgwyn, treasurer, be and he is hereby ordered and directed to satisfy the plaintiff's said recovery and the costs by paying the same out of the said assets."   The plaintiffs may however at once examine, as under the chapter of *The Code* entitled Proceedings Supplementary to the Execution, W. H. S. Burgwyn and the other directors of defendant corporation, or any other persons who may have any assets of defendant corporation in their hands or under their control, without any further proceedings, as it appears from the complaint and answer in this case and the proof, that the defendant company, through Burgwyn, its treasurer, either received or ought to have received, at the time of the sale of the defendant corporation's property and franchise, an amount from that sale more than the judgment recovered in this action, and that there is no other creditor, nor is there any other property of the defendant corporation.

Modified and Affirmed.