## JANIE DAVIS GRIFFIN v. CHARLES M. GRIFFIN.

(Filed 25 March, 1953.)

**1. Judgments § 19—**

Where it appears that plaintiff joined issue with defendant, asked for affirmative relief and appeared at the hearing of the show cause order outside the county in which the action was pending, and thus submitted to the jurisdiction of the court, plaintiff may not attack the order entered on the ground that the court was without jurisdiction, since it appears upon the face of the record that plaintiff consented to the hearing outside the county.

**2. Divorce and Alimony § 19—Probative force of conflicting evidence as to suitability of respective parents to have custody of child is for court.**

Affidavits of residents of his community attesting that deponent had known defendant for a period of years, dealt with him, observed his conduct, etc., and stating deponent's opinions that defendant is a person of integrity and a fit and suitable person to have custody of his son and that it would be to the best interest of the son that defendant share his custody,

GRIFFIN *v.* GRIFFIN.

*is held* sufficient to support the court's finding that there had been no such moral deterioration in defendant's character as to make it detrimental for his son to visit with him, but that the welfare of the child would be served by visitation with his father, notwithstanding plaintiff's counter affidavits, the probative force of the conflicting evidence being in the exclusive province of the presiding judge, and his findings being conclusive when supported by competent evidence.

**3. Appeal and Error § 6c (3)—**

An exception to the failure of the court to make certain specific findings in favor of appellant is untenable when the record discloses that appellant made only a general request that the court find the facts and made no request that the court make any specific findings.

**4. Divorce and Alimony § 19—**

Under G.S. 50-13 the court has discretionary power, upon supporting findings of fact, either to divide custody between the parents for alternating periods or to award custody to one parent subject to visitation privileges in favor of the unsuccessful parent, and therefore a decree providing for the father's access to the child at stated intervals comes within the permissive bounds of the statute regardless whether it be called partial custody or visitation privilege.

**5. Same—**

While the welfare of the child is the paramount consideration in awarding its custody under G.S. 50-13, the court is given wide discretionary power in reaching decisions in particular cases. Such decree is subject to alteration upon a change of circumstances affecting the welfare of the child.

APPEAL by plaintiff from *Bone, Resident Judge* of the Second Judicial District, at Chambers in Nashville, 18 August, 1952. From WILSON.

Civil action by wife for absolute divorce on the ground of two years' separation, heard below, pending trial of the divorce action, on motion of the defendant father for custody of eleven-year-old son born of the marriage.

The judgment entered below is as follows:

"This cause comes on to be heard before the undersigned in Chambers in Nashville, N. C., on 18 August, 1952, upon the defendant's motion in the cause, under G.S. 50-13, for the custody of Francis Millard Griffin, minor child of the plaintiff and the defendant. After hearing the pleadings, motion, answer thereto, affidavits of both sides and argument of counsel, the court finds:

"1. That this action is one for divorce on the ground of two years separation and for the custody of said child, commenced on April 8, 1952 and is still pending in the Superior Court of Wilson County.

"2. That plaintiff and defendant were married April 17, 1938 and lived together until August 22, 1949, at which time they separated and they

are still living in a state of separation from each other, both residing in Wilson County, N. C.

"3. That the child, Francis Millard Griffin, was born unto plaintiff and defendant on October 11, 1941 and since the separation of plaintiff and defendant has lived with plaintiff who has properly cared for him at her own expense. She has not asked defendant for any contribution to the maintenance of said child and he has made none.

"4. That the plaintiff is a woman of good character and a fit and suitable person to have the custody of said child. This was admitted by counsel for defendant at the hearing.

"5. That for a time said child was unhealthy, physically and to some extent emotionally upset. For these infirmities he has undergone considerable treatment by doctors who have expressed the opinion that much of his trouble was caused by domestic discord between plaintiff and defendant, and that his well-being requires that plaintiff be allowed to retain exclusive custody of him. It is not clear from the affidavits as to what factual history these doctors based their opinions upon nor how they obtained the information constituting the same. The said child is now greatly improved in health and is enjoying a practically normal boyhood.

"6. That for several months prior to the separation of plaintiff and defendant they quarreled frequently. She says that this was caused by his excessive use of intoxicating liquors, his cruelty to her, his association with other women and his dishonest dealings with her property. He says it was due to her mercenary nature, her unfounded jealousy and her nagging disposition. A suit between them involving a controversy over their respective property rights is now pending in the Superior Court of Wilson County. While the court has considered these charges and counter-charges in so far as they may throw any light upon the fitness of the parties to have custody of the child, yet, it has not seemed necessary or proper that the court undertake a detailed finding of facts upon these conflicting contentions of the parties relating to their grievances against each other. The defendant did not request any findings of facts and the plaintiff did not ask the court to find any specific fact or facts but did make a general request that the court 'find the facts,'

"7. That certain affidavits of plaintiff tend to show that the defendant prior to and since the separation has displayed bad temper, used intoxicating liquors to excess and engaged in indiscretions with other women. The defendant is a licensed attorney at law practicing his profession in the town of Wilson, N. C. and the affidavits of several of his fellow-members of the Bar, public officials and other prominent citizens of Wilson County show that he enjoys a good reputation personally and professionally and the court after careful consideration of the affidavits on

both sides is unable to find that there has been such moral deterioration on the part of the defendant as to make it detrimental to his son for him to be allowed to visit his father.

"8. That it is for the best interest of the said child that his custody be awarded to the plaintiff with reasonable provision for his visitation with defendant.

"9. That the relationship of the parties and the circumstances are such that visitation and association with the said child by the defendant at the home of plaintiff would be impracticable and unsatisfactory to all parties concerned. The rights of defendant and the welfare of the child would be served by a provision whereby the defendant might see and associate with his child at some place other than the home of plaintiff.

"Now, THEREFORE, it is by the court ordered, adjudged and decreed:

"1. That the custody of the child, Francis Millard Griffin, be awarded to the plaintiff, subject to the provision hereinafter contained with respect to his visitation with defendant.

"2. That on the first Saturday in each calendar month, commencing with September 1952, the defendant, not earlier than the hour of nine (9) o'clock A. M., shall be allowed to take the said child and keep him until five (5) o'clock P. M. on the next succeeding day (Sunday) at which latter time he shall return said child to the home of plaintiff. On each Sunday that the said child is with the defendant he, the said defendant, shall take said child to Sunday School and Church services.

"3. That during the first 10 days of the month of July in each year, commencing with July 1953, the defendant shall be allowed to keep the said child with him, taking him from the home of plaintiff not earlier than nine (9) o'clock A. M. on the first day of the month and returning him to the home of plaintiff not later than five (5) o'clock P. M. on the 10th day of the month."

From judgment entered the plaintiff appealed, assigning errors.

*Chas. B. McLean and Gardner, Connor & Lee for plaintiff, appellant.*
*Lucas & Rand, Cooley & May, Lamb & Lamb, and Vernon F. Daughtridge for defendant, appellee.*

JOHNSON, J. The plaintiff urges that the judgment is invalid for the reason that the hearing was conducted and the judgment was rendered outside of the county wherein the action was and is pending. The plaintiff points to the fact that the action was pending in Wilson County, whereas the hearing involving the custody of the child was conducted and the judgment was signed in Nashville, Nash County.

Conceding, as we may, that a judge of the Superior Court is without authority to hear a motion or make an order substantially affecting the

rights of the parties outside of the county in which the action is pending, unless specially authorized to do so by statute or by express consent of the parties (*Patterson v. Patterson*, 230 N.C. 481, 53 S.E. 2d 658; *Bisanar v. Suttlemyre*, 193 N.C. 711, 138 S.E. 1), even so, in the case at hand it appears upon the face of the record that the plaintiff consented to the hearing outside of the county.

These facts are disclosed by the record: After the plaintiff wife instituted her action for absolute divorce in Wilson County, the defendant husband by petition and motion in the cause, under G.S. 50-13, asked for the custody of the child. Thereupon Judge Walter J. Bone, Resident Judge of the Second Judicial District, signed an order directing the plaintiff to appear before him at the courthouse in Nashville on 16 August, 1952, and show cause why the defendant should not be awarded the custody of the child. The plaintiff was duly served with a copy of the order to show cause and with copy of the petition and motion. She filed answer denying the defendant's material allegations and asserting that he was not entitled to custody. She further asked that the court award her "the exclusive . . . custody . . . of the child." By agreement of the parties, the hearing on the show-cause order was continued until 18 August, 1952. On that day the matter came on regularly before Judge Bone, in Nashville, and, after hearing evidence offered by each side, he rendered the judgment from which the plaintiff appeals.

It thus appears that the plaintiff, without challenging the authority of Judge Bone to hear and determine the matter, voluntarily joined issue with the defendant and by answer and motion of her own asked by way of affirmative relief for the custody of the child, and this she was awarded, subject to privileges of part-time custody or visitation granted to the defendant.

Besides, the record contains a stipulation signed by counsel representing both sides reciting, among other things, that "the court was properly organized and that the parties were duly before the court."

It is manifest that the plaintiff consented to the hearing before Judge Bone and is bound by the judgment rendered. Decision here is controlled by what was said in *Heuser v. Heuser*, 234 N.C. 293, 67 S.E. 2d 57. See also *Collins v. Highway Commission, ante,* 277; and *Pate v. Pate,* 201 N.C. 402, 160 S.E. 450. The decisions in *Patterson v. Patterson, supra, Bisanar v. Suttlemyre, supra,* and *Jeffreys v. Jeffreys,* 213 N.C. 531, 197 S.E. 8, cited and relied on by the plaintiff, are factually distinguishable.

Next, the plaintiff challenges the sufficiency of the evidence to support the findings of fact upon which the court awarded the defendant part-time custody or visitation privileges. These are the findings which the plaintiff by specific exceptions insists are without supporting evidence:

1. "That the court is unable to find that there has been such moral deterioration on the part of the defendant as to make it detrimental to his son for him to be allowed to visit his father." (Assignment of Error No. 5, based on Exception No. 4.)

2. ". . . that the best interest of the child would be served by visitation with the defendant." (Assignment of Error No. 6, based on Exception No. 5.)

3. ". . . that the rights of the defendant and the welfare of the child would be served by a provision whereby the defendant might see and associate with the child . . ." (Assignment of Error No. 7, based on Exception No. 6.)

The record discloses substantial competent evidence in support of each of these findings. It suffices to direct attention to certain affidavits offered in evidence by the defendant (R. pp. 132 to 157), made by residents of his community. These deponents attest that over a period of years they have known the defendant, dealt with him, observed his conduct, his habits and his demeanor, and they give as their opinions that he is a person of integrity, fit and suitable to have custody of his 11-year-old son, and that it will be for the best interest of the son that the father share his custody and that the son be allowed to spend a portion of his time with his father.

It is true that the plaintiff offered counter affidavits made by a large number of persons who gave opinions diametrically in conflict with those expressed by the defendant's deponents. The question of deciding the probative force of this conflicting evidence rested exclusively with the presiding judge. The rule is well established with us that findings of fact by the trial court in a proceeding to determine the custody of a minor child ordinarily are conclusive when based on competent evidence. *Gafford v. Phelps*, 235 N.C. 218, p. 223, 69 S.E. 2d 313; *McEachern v. McEachern*, 210 N.C. 98, 185 S.E. 684.

The plaintiff also challenges this portion of Finding of Fact No. 5 as not being supported by evidence: "It is not clear from the affidavits as to what factual history these doctors based their opinions upon nor how they obtained the information constituting the same." (Assignment of Error No. 3, based on Exception No. 2.) When interpreted in context with the rest of the fifth finding, it may be doubted that the sentence to which the exception relates is a finding of fact. It would seem to be more of an expression of the court's evaluation of the probative force of the medical testimony as bearing on the health of the child as a factor to be considered in determining the question of divided custody or visitation privileges. But be that as it may, the exception would seem to be without substantial merit, especially so in view of this related finding, to which

GRIFFIN *v.* GRIFFIN.

no exception is taken: "The said child is now greatly improved in health and is enjoying a practically normal boyhood."

Nor is there any merit in plaintiff's contention that the court failed to find facts favorable to her. The record discloses that she made only a general request that the court "find the facts." The court complied with this request. There was no request for any specific finding. If the plaintiff desired specific findings of fact, she should have requested them. It is too late for the plaintiff on appeal to complain of failure of the court to find specific facts, when no specific request therefor was made at the hearing. *Mfg. Co. v. Lumber Co.,* 177 N.C. 404, p. 406, 99 S.E. 104. See also *Thomson-Houston Electric Light Co. v. Henderson Electric and Gas Light Co.,* 116 N.C. 112, 21 S.E. 951.

Other exceptions relating to the sufficiency of the evidence are either broadside or are otherwise without merit.

The plaintiff also insists that the visitation privileges awarded the defendant amount in point of fact and in law to part-time custody of the child and that the findings of fact do not support the judgment in this respect. Here the plaintiff points to the finding of fact that the court "is unable to find that there has been such moral deterioration on the part of the defendant as to make it detrimental to his son for him to be allowed to visit his father."

This, the plaintiff insists, being a negative finding in respect to the father's fitness to have custody of the child during the visitation periods, is insufficient to support the award. However, a perusal of the judgment discloses that there is more to it than that. Judge Bone further finds in effect that it is for the best interest of the child that reasonable provision be made for his visitation with the father, and that the welfare of the child will be served by making provision whereby the defendant may "see and associate with his child at some place other than the home of the plaintiff." The latter finding is related to and based on this preceding finding, to which no exception is taken: "That the relationship of the parties and the circumstances are such that visitation and association with the said child by the defendant at the home of the plaintiff would be impracticable and unsatisfactory to all parties concerned. . . ." (Finding No. 9.)

The statute, G.S. 50-13, under which the hearing was conducted, provides: "After the filing of a complaint in any action for divorce, whether from the bonds of matrimony or from bed and board, both before and after final judgment therein, it is lawful for the judge of the court in which such application is or was pending to make such orders respecting the care, custody, tuition and maintenance of the minor children of the marriage as may be proper, and from time to time to modify or vacate such orders, and may commit their custody and tuition to the father or

mother, *as may be thought best;* or the court may commit the custody and tuition of such infant children, in the first place, to one parent for a limited time, and after the expiration of that time, then to the other parent; and so alternately: . . ." (Italics added.)

Thus it is noted that this statute in express terms authorizes the apportionment of custody for alternate periods between parents. And in applying the statute in cases where one parent is awarded general custody, the ordinary and accepted procedure is for the court, in deference to the natural rights of the unsuccessful parent, to include in the decree a provision permitting the parent deprived of custody to have privileges of visitation under such conditions as the circumstances of the particular case may warrant, provided such visitation privileges may be carried out without jeopardizing the welfare of the child. *Tyner v. Tyner,* 206 N.C. 776, 175 S.E. 144. See also 39 Am. Jur., Parent and Child, Sec. 14; 67 C.J.S., Parent and Child, Sec. 13, p. 683; 27 C.J.S., Divorce, Sec. 312; Nelson, Divorce and Annulment, Second Ed., Vol. 2, Sec. 15.17.

Therefore, since the controlling statute, G.S. 50-13, confers upon the trial court discretionary power either to divide custody between contending parents for alternating periods, or to award general custody to one parent subject to visitation privileges in favor of the unsuccessful parent, it would serve no useful purpose to extend this opinion with a discussion of the technical differences and refinements between divided custody and access or visitation privileges, nor is it necessary that we attempt to mark out the bounds and limits of these privileges. It is enough to say that in the instant case the decree providing for the father's access to the child at stated intervals—whether it be called partial custody or visitation privilege—comes within the permissive bounds of our statute. And the findings of fact made by the court below, when considered in the aggregate, support the decree.

Moreover, in applying the provisions of G.S. 50-13, the decisions of this Court, while emphasizing that the welfare of the child is always to be treated as the paramount consideration, to which even parental love must yield, recognize that wide discretionary power is necessarily vested in the trial court in reaching decisions in particular cases. *Gafford v. Phelps, supra; Walker v. Walker,* 224 N.C. 751, 32 S.E. 2d 318; *Story v. Story,* 221 N.C. 114, 19 S.E. 2d 136; *Sanders v. Sanders,* 167 N.C. 317, 83 S.E. 489; *Setzer v. Setzer,* 129 N.C. 296, 40 S.E. 62. See also 17 Am. Jur., Divorce and Separation, Sec. 675.

It is to be noted that the judgment determines only the present rights of the parties respecting custody of the child. The decree is subject to alteration upon a change of circumstances affecting the welfare of the child. *Hardee v. Mitchell,* 230 N.C. 40, 51 S.E. 2d 884. *Cf. Neighbors v. Neighbors,* 236 N.C. 531, 73 S.E. 2d 153.

It follows from what we have said that the judgment below is
Affirmed.