SAMMY WARREN WOODRUFF v. JANET WALLACE WOODRUFF

No. 7921DC456

(Filed 18 December 1979)

Divorce and Alimony § 25.12 — homosexual father — visitation rights with son not denied

The trial court did not err in granting plaintiff father who was a homosexual unsupervised overnight visitation rights with his minor son.

APPEAL by defendant from *Tash, Judge*. Order entered 7 March 1979 in District Court, FORSYTH County. Heard in the Court of Appeals 14 November 1979.

Plaintiff's complaint alleges that his wife, defendant, refused to allow him to visit with their minor son, born on 11 February 1976, in accordance with the terms of a 3 May 1978 separation agreement under which plaintiff was given "reasonable and

liberal rights of visitation." By letter dated 17 August 1978 from defendant to plaintiff, defendant set out certain limitations on plaintiff's visitation and indicated her concern that their son not be exposed to plaintiff's "open and gay life-style."

At a hearing on 19 January 1979, plaintiff's evidence tended to show: that plaintiff currently lives alone; that he is seeking increased visitation rights; that he is a homosexual; that prior to his separation, another homosexual was a frequent visitor at his home, and at times, he visited when defendant was absent, but their son was at home; that on at least one occasion when he was there, the door was locked, and the curtains pulled; that on one occasion, plaintiff and the other person took the parties' son on a walk in a secluded area near their home; that after the separation, plaintiff moved to an apartment with the other homosexual; and that plaintiff occasionally smokes marijuana.

Winston Stuart, an acquaintance of plaintiff and defendant, testified that plaintiff was a good father regardless of his homosexuality.

Dr. John Compere, who was found to be an expert in the field of clinical psychology, testified: that plaintiff disclosed his homosexuality to defendant during one of several counseling sessions they had with him; that plaintiff cared for his son over the past year while defendant worked; that to stop plaintiff's association with his son would be detrimental to the child's well-being; and that both plaintiff and defendant are fit parents.

Defendant's evidence tended to show that she is worried about plaintiff's having exposed their child to his lover and the detrimental effect plaintiff's homosexuality will have on the child in their community. Defendant had used marijuana three times but not around the minor child. Plaintiff took good care of the child until 31 March 1978 when he frequently began leaving him with his mother, mother-in-law, or at a day-care facility. After plaintiff and defendant separated, plaintiff and another homosexual lived in an apartment with only one bed and with bowls of marijuana openly displayed.

The court entered an order allowing plaintiff alternate weekend visitation pending a more complete review and hearing on the matter. On 2 March 1979, a hearing was held at which

plaintiff and his mother testified about plaintiff's visitations with his son since 19 January 1979. Defendant testified that their son's visits with plaintiff were very damaging, leaving him nervous and insecure, causing defendant to remove him from school, and retaining a child psychiatrist.

The court entered an order finding, *inter alia*: that plaintiff has admitted homosexual tendencies; that in Dr. Compere's opinion, plaintiff was the more "nurturing parent," and to sever this father-son relationship would be detrimental to the child's well-being, whereas to maintain it would be in the child's best interest; and that there was no evidence that plaintiff ever physically abused the child or showed affection for other men in the child's presence. The court concluded that both parties were fit and proper parents and ordered that plaintiff be allowed alternate weekend, summer, and holiday visitation. Defendant appealed.

*Schramm & Frenck, by John J. Schramm, Jr., for plaintiff appellee.*

*White & Crumpler, by Fred G. Crumpler, Jr. and V. Edward Jennings, Jr., for defendant appellant.*

ERWIN, Judge.

Did the trial court commit error in granting a father who is homosexual unsupervised overnight visitation rights with his minor son? On the record before us, we answer, "No."

Courts are generally reluctant to deny all visitation rights to parents of a child of tender age, but it is generally agreed that visitation rights should not be permitted to jeopardize a child's welfare. *Swicegood v. Swicegood,* 270 N.C. 278, 154 S.E. 2d 324 (1967). *Annot.,* 88 A.L.R. 2d 148 (1963). While the welfare of a child is always to be treated as the paramount consideration, the courts recognize that the wide discretionary power is necessarily vested in the trial courts in reaching decisions in particular cases. *Griffin v. Griffin,* 237 N.C. 404, 75 S.E. 2d 133 (1953).

The court found facts as follows:

"[t]hat the plaintiff admitted having homosexual tendencies and experienced a feeling of love for a male person named Don Hall. That Don Hall, on occasions, visited with plaintiff

Woodruff v. Woodruff

in their home during a period when plaintiff was unemployed and the defendant was at work. On one of these occasions, when the child was present, Don Hall visited with the plaintiff during an afternoon when the doors were locked and the window shades drawn. On another occasion, plaintiff and Don Hall, in the company of the minor child, went for a walk alone, in a park near Yadkin River. Subsequently, plaintiff and defendant were separated as were Don Hall and his wife, and plaintiff and Don Hall moved into an apartment where they lived together for some period of time.

\* \* \*

Dr. Compere further stated that in his professional, expert opinion, there is no known cause of male homosexuality. He further testified that there is, however, a substantiated theory that a male child, raised by an extremely domineering mother, may pursue a homosexual lifestyle [sic]. Dr. Compere further stated that, in his professional expert opinion, the son of a homosexual father will not inherit that homosexuality.

The doctor further testified that in his professional expert opinion, a severance of the father-son relationship in this case would be detrimental to the child's wellbeing [sic] and that maintenance of the father-son relationship would be beneficial and in the child's best interest.

DEFENDANT'S EXCEPTION NO. 7

The Court further finds that there is no evidence that the minor child has ever been physically abused by the plaintiff; nor is there evidence that the plaintiff ever demonstrated any affection for other men in the presence of the minor child."

The evidence presented supports the court's findings of fact, and the conclusions of law entered by the court were proper. The primary custody of the child was placed with the defendant-mother. The court further ordered: "It is further ordered that the plaintiff shall not cause the minor child to be in the presence of his boyfriends, and shall not have boyfriends visit him in his home when he is with the child."

We concede that the trial court was faced with a very serious and difficult problem in this case. We note the order entered is not permanent in nature and may be changed from time to time if circumstances and conditions then and there existing warrant change in the visitation rights awarded. We do not find any evidence from the record that would lead us to reverse this case.

Judgment affirmed.

Judges CLARK and ARNOLD concur.